Allen, J.
The injunction granted by the trial court in this case reads in full as follows:
*79 “1. The defendant International Brotherhood of Electrical Workers, Local No. 8, and each and all of the members of said Local No. 8, and the defendants Chris. McCullough, individually and as president of International Brotherhood of Electrical Workers, Local No. 8, Oliver Myers, individually and as business agent of International Brotherhood of Electrical Workers, Local No. 8, Richard Fisher, individually and as financial secretary of International Brotherhood of Electrical Workers, Local No, 8, Ross Kettle, James J. Maher (sued herein as Jim Mahr), and Charles Gr. Thornton, individually and as business agent of Plasterers’ Local Union No. 7, and all other persons whomsoever to whom notice of this order shall be given, are hereby permanently enjoined and restrained from doing or saying any of the following acts and things, to-wit:
“(a) From inducing, by intimidation, threats, abuse, or violence, or thereby attempting to induce, any person who is now or who may hereafter become, an employee of plaintiff, to leave plaintiff’s employ, and from preventing, by intimidation, threats, abuse, or violence, or by said means attempting to prevent, any person from entering plaintiff’s employ.
“(b) From calling plaintiff’s employees rats, scabs, snakes, or any other epithets, and from using any vile, indecent, or insulting language to, or towards, or of, plaintiff’s employees, in their presence or hearing, or to, or towards, or of, persons entering or leaving plaintiff’s premises, or persons entering or leaving premises upon which plaintiff’s employees are engaged in work, in the presence or hearing of such persons, and from threatening, in *80 timidating, insulting, attacking, beating, wounding, or injuring any employee of plaintiff, or any person entering or leaving plaintiff’s premises, or any person entering or leaving premises upon which plaintiff’s employees are engaged in work.
“(c) From approaching, accosting, or following, with intent to injure or intimidate, any person in the employ of plaintiff, or any person entering or leaving plaintiff’s premises, or any person entering or leaving premises upon which plaintiff’s employees are engaged in work.
“(d) From loitering at or in the vicinity of plaintiff’s shop, or at or in the vicinity of any place at which plaintiff’s employees may be engaged in work, or on the streets used by plaintiff’s employees in going to or from their work, or in the vicinity of the home of any of plaintiff’s employees.
“(e) From assembling or congregating, in numbers in excess of three, for the purpose of accosting or interviewing persons in the employ of plaintiff, or being assembled or congregated in numbers in excess of three, from accosting or interviewing any of plaintiff’s employees while so assembled and congregated at any place whatsoever, and if the defendant International Brotherhood of Electrical Workers, Local No. 8, shall appoint or designate or authorize any person or persons on defendants’ behalf to accost or interview or approach persons in plaintiff’s employ, or contemplating entering plaintiff’s employ, the defendant Chris. McCullough, as president of the defendant International Brotherhood of Electrical Workers, Local No. 8, is hereby ordered and required to keep a record of the persons who shall be so appointed or designated.
*81 “(f) From approaching, accosting, interviewing, or following any person in the employ of plaintiff, against the will of such person.
“(g) From taking any steps whatsoever, except by peaceful persuasion of plaintiff’s employees or prospective employees, either to leave its employ or to refuse to enter its employ, and join said defendant Local No. 8, maliciously designed to compel plaintiff, against its will, to resume relationship and dealings with International Brotherhood of Electrical Workers, Local No. 8, or with any officer, representative, or member of such union, or to compel plaintiff against its will to operate its shop as a closed union shop.
“(h) From assaulting, injuring, or attempting to injure, and from threatening, intimidating, or following, with intent to injure or intimidate, any member of the family of any person employed by plaintiff.
“2. The defendant Oliver Myers, individually and as business agent of International Brotherhood of Electrical Workers, Local Union No. 8, and the following named persons, individually and as members of the executive board or executive committee of said International Brotherhood of Electrical Workers, Local No. 8, to-wit, the defendant James J. Maher (sued herein as Jim Mahr), and the defendant Boss Kettle, and the defendant Charles GL Thornton, individually and as business agent of Plasterers’ Local Union No. 7, are, and each of them is, hereby permanently enjoined and restrained from doing any of the acts specified in paragraphs (a), (b), (c), (d), (e), (f), (g), and_(h) of section 1 of this order, and are further enjoined and re *82 strained, from going to plaintiff’s shop, or the vicinity thereof, or to any place upon which plaintiff’s employees may be engaged in work, or the vicinity thereof, for the purpose of speaking to, interviewing, persuading, following, or in any manner communicating with any person in plaintiff’s employ.
“Each defendant, except Plasterers’ Local Union No. 7, Lathers’ Union No. 24, and August Meyer-b offer, excepts to the granting of said order and each and every part thereof, and plaintiff excepts to the refusal of the court to restrain the individual defendants and the defendant Local Union No. 8, and its members, officers, and agents, from persuading plaintiff’s employees to break or terminate their employment contracts, from persuading prospective employees to refuse to enter plaintiff’s, employ, and from picketing plaintiff’s plant and jobs, and from taking any further steps of any kind in pursuance of the wrongful conspiracy found by the court to exist among them.
“This order of injunction is conditional upon plaintiff’s giving bond in accordance with law, in the amount of $500, and said bond having been given by the plaintiff, and having been duly approved, it is ordered that said injunction become effective forthwith.”
As the parties here stand in the same relation as in the trial court, the plaintiff in error will be called the plaintiff and the defendants in error the defendants throughout this opinion.
It will be observed that the injunction very fully restrained the use of any possible violence by the electrical workers, either as individuals or as a *83 union. It also restrained four of the individual defendants, who the court found had used abuse, violence, and coercion in prosecuting the strike, from going to plaintiff’s establishment, or the vicinity thereof, or to any place where plaintiff’s employes were engaged at work, or the vicinity thereof, for the purpose of communicating in any manner with any person in plaintiff’s employ. The court refused, however, to enjoin peaceable picketing by the strikers in general at or near the establishment of their former employer, and refused to enjoin peaceable persuasion; that is, the use of peaceable argument to dissuade workmen from remaining in the employ of the plaintiff company, or to dissuade men who had not been working at the plant from entering that particular employment. That is to say, the question before us for decision is this: May men who have left their employment temporarily, for the purpose of bringing pressure to bear in the interest of changing the conditions under which they labor, peaceably picket and persuade men. who are in their former employer’s service to cease their work, and may they also, without the use of violence, persuade men who contemplate entering their former employer’s service not to do so; or are such acts, even though done in pursuance of the strike purpose, illegal and subject to injunction?
In this connection the employer urges that there is no legitimate trade dispute in this case, for the reason that employer and employes had completely ended their connection before this suit was begun. This fact is technically true upon the record. The time limit of the contract of employment had expired, and immediately at the conclusion of that *84 period the plaintiff endeavored to employ some of the same workmen, members of the defendant union, who were in the employ of the plaintiff immediately before the contract period had expired, and to induce each of them to sign a so-called individual contract providing for the open shop. These individual contracts the company sought to secure, not merely from men who had never worked for it before, but also from old employes, and it was this demand which brought about the strike.
Upon the record with regard to this point there can be little doubt that a legitimate trade dispute existed in this case, in which former employes of the plaintiff company were seeking to secure the right to work with the company under terms of employment different from those which their' employer was at the time requiring. That being the case, the methods open to use in a legitimate trade dispute were open to the strikers here. The direct question facing us is whether these methods rightly include peaceful picketing and peaceful persuasion of workers to cease their work and not to accept employment with the plaintiff company.
Peaceful picketing has frequently been held lawful in Ohio. A long line of authority in the lower tribunals, which includes decisions of outstanding judges in the nisi prius courts in this state, holds that in the prosecution of a strike, that is, a refusal of employes to work owing to a legitimate trade dispute with their employers, workingmen may legally place pickets or patrols within a reasonable distance of the employer’s place of business for the purpose of observing the progress of the strike. These decisions have been acquiesced in in this state *85 for almost 25 years, the period during which industrial strife has become most prominent. It is also generally held by the same Ohio lower courts that striking workmen may peaceably persuade men and women still working under their former employer to abstain from working for the employer during the continuance of such strike, and may peaceably persuade new workmen not to accept employment. This court, however, has never passed upon the specific questions here presented, except in an affirmance without opinion of a nisi prius case.
The rule above given obtains in other state jurisdictions of consequence, and also in the federal courts. (24 Cyc., 835, notes 76 and 77, and cases cited; American Steel Foundries v. Tri-City Central Trades Council, 257 U. S., 184, 42 Sup. Ct., 72, 66 L. Ed., 189.) That last case, it is true, construed Section 20 of the Clayton Act (Section 1243d, U. S. Comp. Stat.; Section 1035, Barnes’ Fed. Code), which provides that no restraining order or injunction shall prohibit any person or persons from “attending at any place where any such person or persons may lawfully be, for the purpose of peaceably obtaining or communicating information, or from peacefully persuading any person to work or to abstain from working.” Chief Justice Taft, in discussing this provision of the Clayton Act, called specific attention (257 U. S., 203, 42 Sup. Ct., at page 76, 66 L. Ed., 189) to the fact that these provisions simply declare the rule which had heretofore been laid down in equity jurisprudence:
“It is clear,” he says, “that Congress wished to forbid the use by the federal courts of their equity arm to prevent peaceable persuasion by employees, *86 discharged or expectant, in promotion of their side of the dispute, and to secure them against judicial restraint in obtaining or communicating information in any place where they might lawfully be. This introduces no new principle into the equity jurisprudence of those courts. It is merely declaratory of what was the best practice always. Congress thought it wise to stabilize this rule of action tnd render it uniform.
“The object and problem of Congress in Section 20, and indeed of courts of equity before its enactment, was to reconcile the rights of the employer in his business and in the access of his employees to his place of business and egress therefrom without intimidation or obstruction, on the one hand, and the right of the employees, recent or expectant, to use peaceable and lawful means to induce present employees and would-be employees to join their ranks, on the other.”
What peaceable picketing is under the law in this state depends upon the circumstances of the case. The number of pickets is not conclusive, nor can any special rule be laid down in detail to define peaceable picketing. This much is established. Picketing in such numbers as to prevent free access to the plant of the employer, or in itself to constitute a threat of physical force, is unlawful. Acts or threats, direct or indirect, made by pickets to workmen employed by their former employers, or to their families, which tend to amount to coercion or duress, or tend to substitute the will of the strikers for the will of those whom they approach in persuading employes to leave their work or in inducing others not to seek employment with the strikers’ former employer, are unlawful and subject to injunction.
*87 The injunction of the court in this case prohibits all forms of picketing, except peaceful picketing, prohibits all violence, abuse, congregation in numbers in excess of three, and actually restrains certain defendants from acting as pickets under any circumstances. This court finds no error in the judgment of the court of common pleas upon this branch of the case.
The second alleged ground of error upon which the plaintiff relies is that the court below failed to enjoin peaceful persuasion of employes to leave their work and peaceful persuasion of men applying for work not to accept employment with the plaintiff company. Plaintiff urges that it has property rights in its contracts with its employes; that these property rights were destroyed when the union men induced the workmen of the company to leave their employment; and that such persuasion should therefore have been enjoined whether or not the persuasion was peaceable.
The plaintiff cites various United States decisions of importance in support of its contention, many of which deal with infringement of contract rights by the legislative branch of the government. If the Legislature must maintain the obligation of contracts, plaintiff argues, the judiciary likewise must maintain the obligation of contracts, by restraining strikers from inducing men to sever their employment by means unpeaceful or peaceful.
Before proceeding to examine the merits of this proposition, let us inquire into the nature of the employment which existed between the workmen and the company in this case. The court of common pleas in its findings determined the following facts: That an agreement was in effect between the *88 plaintiff and Local No, 8 of the International Brotherhood of Electrical Workers up to April 30, 1920; that upon Thursday, April 29, 1920, the plaintiff paid all of its workmen and terminated all existing contracts of employment with them; that when plaintiff’s former employes and other applicants for work reported at the plant on Monday, May 3d, there was handed to each of them to be signed a written agreement in which, among other terms, the following was provided:
“The employment of said employee under this agreement shall continue until either the employee or the employer shall have given the other two days’ written notice of his intention to terminate it, except in the case of misbehavior or incompetency of the employee, which shall be ground for an immediate termination of the employment by the employer.”
That is to say, whenever either the employer or the employe gave the other party two days’ written notice of his intention to terminate the relation under the contract, such party had a right to terminate the employment after the two days were concluded. The employment, then, was not an employment for a specified term. It was an employment which might be for a month, a year, several years, or for any time, depending upon the will of the parties; and it was a contract which could be terminated, not merely by mutual consent, but at the wish of either one of the parties. The two days’ period did not establish a term for the duration of the contract, but merely a period of convenient notice. The employment was, in other words, an employment at will.
*89 The specific question here raised, then, from the standpoint of inducing workmen to terminate their contracts, is whether peaceably persuading employes who are employed at will to terminate their employment is illegal and may be enjoined. That peaceable persuasion in itself is not illegal, that discussions and arguments with employes tending toward the breaking of contracts of employment, that discussion with men applying for work which ends in their not accepting employment with the particular employer in question, which are unaccompanied by any form of abuse or violence, are not illegal in and of themselves, has been repeatedly held in this state. The doctrine upon that point may be found in a number of Ohio nisi prius decisions. That peaceable persuasion is not illegal under the federal rule is also pointed out in American Steel Foundries v. Tri-City Central Trades Council, supra.
Plaintiff does not so urgently resist this doctrine as to persuading new workmen not to accept employment, but strenuously insists that any persuasion to break a contract, whether for a term or at will, is illegal and enjoinable, citing the cases of Hitchman Coal & Coke Co. v. Mitchell, 245 U. S., 229, 38 Sup. Ct., 65, 62 L. Ed., 260, L. R. A., 1918C, 497, Ann. Cas., 1918B, 461; Truax v. Raich, 239 U. S., 33, 38, 36 Sup. Ct., 7, 60 L. Ed., 131, L. R. A., 1916D, 545, Ann. Cas., 1917B, 283; and Duplex Printing Press Co. v. Deering, 254 U. S., 443, 41 Sup. Ct., 172, 65 L. Ed., 349, 16 A. L. R., 196. These decisions do, upon a superficial view, seem to support plaintiff’s contention.
The Hitchman Coal Company case, for instance, holds that the employer is entitled to the good will *90 of his employes irrespective of the fact that they are employed at will and that the relation is terminable by either at any time, that the employer is entitled to the benefit of the probability that by properly treating his employes he will be able to keep them, in his employ, and that it is unlawful for another party to interfere with this relation without just cause or excuse.
Truax v. Raich, supra, holds that to induce a third person to leave employment is actionable, if done maliciously and without just cause, although such persons are free to leave at their own will. The following is the language of Judge Hughes upon this point in Truax v. Raich, 239 U. S., at page 38, 36 Sup. Ct., 9, 60 L. Ed., 131, L. R. A., 1916D, 545, Ann. Cas., 1917B, 283:
“It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time for any reason, or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn, is too broad. The fact that the employment is, at the will of the parties, respectively, does not make it one at the will of others. The employe has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion, and by the weight of authority the unjustified interference of third persons is actionable, although the employment is at will.”
On the facts, however, neither the Hitchman case nor the Truax case controls the decision of this question. In the Hitchman case the members of a coal miners’ union had notice that the employes of a certain mine were under contract with their employer *91 not to remain in his employment after joining the union. They sought to induce the employes to join the union and to remain at work until enough new members could be obtained to bring about a strike, thus uniting with the union in a plan to subvert the system of employment upon which they had voluntarily agreed with the employer. There were no such facts in the present case. No effort was made to induce the employes still in the employ of the La France Electrical Construction & Supply Company to join the union and remain in the company. The effort was made to have them leave their employment, which was at will.
Chief Justice Taft points out the distinction between the Hitchman case and the ordinary strike case in the Tri-City Central Trades Council opinion, supra:
“The plan thus projected was carried out in the case of the complainant company by the use of deception and misrepresentation with its nonunion employees, by seeking to induce such employees to become members of the union contrary to the express term of the contract of employment that they would not remain in complainant’s employ if union men, and after enough such employees had been secretly secured, suddenly to declare a strike against complainant and to leave it in a helpless situation, in which it would have to consent to be unionized. This court held that the purpose was not lawful, and that the means were not lawful, and that the defendants were thus engaged in an unlawful conspiracy, which should be enjoined. The unlawful and deceitful means used were quite enough to sustain the decision of the court, without more.”
*92 In the case of Truax v. Raich, supra, an Arizona statute was under scrutiny. This statute required any employer of the kind involved in the suit to hire at least four-fifths of its employes from among workmen who were native-born. Penalties were provided for the violation of the act, which constituted a misdemeanor. The action was brought by Raich, who was a native of Austria, against Truax, his employer, to enjoin his discharge, alleging that Truax had notified him that he was to be discharged in accordance with the statute.
It is difficult to see how this Truax case can be considered authority for the proposition that in the case at bar an injunction should have issued against the peaceful persuasion of workmen to terminate an employment at will. In the Truax case there was no peaceful persuasion involved. It was a question entirely of legal compulsion. The Arizona statute compelled the employer to discharge his foreign-born workmen. No one was endeavoring peaceably to persuade Truax to discharge his alien employes. He was forced to do so under the law. The situation would have been more comparable to this case, if some one had persuaded Truax it was better to hire Americans than it was to hire foreigners; that he would receive more intelligent service and the community would be better suited if he employed Americans. If as a result of such conversation Truax had discharged Raich, and Raich had brought a bill in equity to enjoin the third person from suggesting to Truax that he employ native-born men, and the court had held that the fact that the employment was at will made no difference in the case, then the Truax case would have been an authority in the *93 situation which meets us here. Upon the facts, the Truax holding is an authority for the proposition that a statute compelling an employer to terminate a contract, whether for a term or at will, is unconstitutional, and that its enforcement will be enjoined. That doctrine has no relation to the problem before us, which is one as to discussion, argument, and persuasion, by wholly peaceful means, to terminate a contract which under its terms may be ended at any time by the employe.
The Duplex Printing Press Co. v. Deering case was a case of boycott. There the International Association of Machinists, an association with a membership of more than 60,000, united to compel the employer to unionize its factory, enforce the closed shop, the eight-hour day, and the union scale of wages by boycotting the company’s interstate trade. The association conducted in the city of New York a widespread campaign of coercion. It threatened the customers of the Duplex Printing Press Company, the trucking companies that carried its presses, and those who usually set up such presses, with injury in their business if they continued to deal with the Duplex Company. It was a secondary boycott; that is, the International Association of Machinists tried by. coercion to use persons having-nothing to do with the controversy, and having no interest in it, to injure the Duplex Company in its interstate trade. This was held, following the case of Loewe v. Lawlor, 208 U. S., 274, 28 Sup. Ct., 301, 52 L. Ed., 488, 13 Ann. Cas., 815, to be an unlawful combination in restraint of interstate trade. This case, also, does not apply to the facts before us here.
It is difficult upon principle to see how persuading *94 a man. to do a thing, which he may do with perfect legality, can be illegal. If it is legal for a workman to leave his employment at any time, how can it be illegal for a person to suggest to the workman or discuss with him the advisability of his leaving his employment at any time? It would not be legal for a workman, if he had agreed to continue in employment for a year, to break that contract and terminate it without justification after six months. It would, therefore, in the absence of some special justification, not be legal for another person to persuade the workman to leave his employment before the year was over, because he would be persuading the workman to do an illegal thing. But how can the persuasion of one to do a legal thing be in itself illegal? Surely there is nothing in the nature of persuasion per se which makes the use of it illegal.
If in the case here the workmen who struck persuaded or induced the employes of the plaintiff company to terminate their contract immediately, without forty-eight hours notice, as required by the contract, that might under some circumstances be illegal. If the strikers persuaded the employes to give forty-eight hours notice and terminate the employment after the 2 days, that obviously was not illegal, because they were advising the employes to do what they might with perfect right do for themselves.
The findings of fact by the court of common pleas show that four individual defendants did in this case induce employes of the plaintiff company to terminate their contracts immediately. The court enjoined those four individual defendants from going to plaintiff’s shop, or the vicinity thereof, or to any place where plaintiff’s employes might be en *95 gaged in work, for the purpose of speaking to, interviewing, persuading, following, or in any manner communicating with any person in plaintiff’s employ. With the exception of the solicitation by these particular defendants, the evidence does not show that the solicitation was to cease work immediately, before giving the proper notice. The denial of the injunction prayed for, against peaceful persuasion, did not therefore constitute error.
Equality of justice demands that in any controversy the rights of all parties be scrupulously maintained. The right of workmen to be employed, irrespective of union membership, must be maintained ; the right of the employer to conduct his business without illegal interference must be upheld; and legal means employed by strikers must not be curtailed. Among the latter are the right of peaceful picketing, the peaceful persuasion of employes to terminate contracts at will, and the peaceful persuasion of expectant employes not to accept work with the employer in question.
For these reasons the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Marshall, C. J., Wanamaker, Robinson, Jones, Matthias and Day, JJ., concur.