# TRUAX AND THE ATTORNEY GENERAL OF THE STATE OF ARIZONA v. RAICH.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ARIZONA.

No. 361. Argued October 15, 1915.—Decided November 1, 1915.

A suit against officers of the State who are about to proceed wrong-fully to complainant's injury in enforcing an unconstitutional statute is not a suit against the State within the meaning of the Eleventh Amendment.

While, generally speaking, a court of equity has no jurisdiction over prosecution, punishment or pardon of crimes or misdemeanors, equity may, when such action is essential to the safeguarding of property rights, restrain criminal prosecutions under unconstitutional statutes.

The right to earn a livelihood and to continue employment unmolested by efforts to enforce void enactments is entitled to protection in equity in the absence of an adequate remedy at law.

The fact that an employment is at the will of the employer and employé does not make it one at the will of others, and unjustified interference of third parties is actionable although the employment may be at will.

Although a statute may only render an employer liable to prosecution, if it operates directly upon the employment of the employé and its enforcement would compel the discharge of an employé, the latter is affected directly, has no adequate remedy at law, and if the statute is unconstitutional, is entitled to equitable relief.

An alien admitted to the United States under the Federal law has not only the privilege of entering and abiding in the United States but also of entering and abiding in any State, and being an inhabitant of any State entitles him, under the Fourteenth Amendment, to the equal protection of its laws.

The description in the Fourteenth Amendment of any person within the jurisdiction of the United States includes aliens. *Yick Wo* v. *Hopkins*, 118 U. S. 356.

The right to work for a living in the common occupations of the community is of the essence of that personal freedom and opportunity which it was the purpose of the Fourteenth Amendment to secure.

The power to control immigration—to admit or exclude aliens—is vested solely in the Federal Government, and the States may not deprive aliens so admitted of the right to earn a livelihood as that would be tantamount to denying their entrance and abode.

A State may not, in order to protect citizens of the United States, in their employment against non-citizens of the United States in that State, require that employers only employ a specified percentage of alien employés—such a statute denies to alien inhabitants the equal protection of the law and so held as to statute of Arizona of December 14, 1914.

Such a statute is not the less unconstitutional because it allows employers to employ a specified percentage of alien employés.

The rule that a State may recognize degrees of evil and adapt its legislation accordingly, applies to matters concerning which the State has authority to legislate.

Whether the statute of Arizona attempting to regulate employment of aliens, is void as conflicting with rights of aliens under treaties with their respective nations not determined in this case as the statute is held unconstitutional under the equal protection provision of the Fourteenth Amendment.

219 Fed. Rep. 273, affirmed.

THE facts, which involve the constitutionality under the equal protection provision of the Fourteenth Amendment of the Act of December 14, 1914, of the State of Arizona relative to the employment of aliens in that State, are stated in the opinion.

*Mr. Wiley E. Jones*, Attorney General of the State of Arizona, *Mr. Leslie C. Hardy*, Assistant Attorney General of the State of Arizona, with whom *Mr. George W. Harben*, Assistant Attorney General of the State of Arizona, *Mr. J. Addison Hicks* and *Mr. W. B. Cleary* were on the brief, for appellants.

*Mr. Alexander Britton*, with whom *Mr. Evans Browne* and *Mr. Francis W. Clements* were on the brief, for appellee.

MR. JUSTICE HUGHES delivered the opinion of the court.

Under the initiative provision of the constitution of Arizona (Art. IV, § 1), there was adopted the following measure which was proclaimed by the Governor as a law of the State on December 14, 1914:

"An act to protect the citizens of the United States in their employment against non-citizens of the United States, in Arizona, and to provide penalties and punishment for the violation thereof,

"Be it enacted by the People of the State of Arizona:

"SECTION 1. Any company, corporation, partnership, association or individual who is, or may hereafter become an employer of more than five (5) workers at any one time, in the State of Arizona, regardless of kind or class of work, or sex of workers, shall employ not less than eighty (80) per cent qualified electors or native-born citizens of the United States or some sub-division thereof.

"SEC. 2. Any company, corporation, partnership, association or individual, their agent or agents, found guilty of violating any of the provisions of this Act shall be guilty of a misdemeanor, and, upon conviction thereof, shall be subject to a fine of not less than one hundred ($100.00) dollars, and imprisoned for not less than thirty (30) days.

"SEC. 3. Any employé who shall misrepresent, or make false statement, as to his or her nativity or citizenship, shall, upon conviction thereof, be subject to a fine of not less than one hundred ($100.00) dollars, and imprisoned for not less than thirty (30) days." Laws of Arizona, 1915. Initiative Measure, p. 12.

Mike Raich (the appellee), a native of Austria, and an inhabitant of the State of Arizona but not a qualified elector, was employed as a cook by the appellant William Truax, Sr., in his restaurant in the City of Bisbee, Cochise County. Truax had nine employés, of whom seven were neither 'native-born citizens' of the United States nor qualified electors. After the election at which the act was passed Raich was informed by his employer that when the law was proclaimed, and solely by reason of its requirements and because of the fear of the penalties that would be incurred in case of its violation, he would be discharged. Thereupon, on December 15, 1914, Raich filed this bill in the District Court of the United States for the District of Arizona, asserting among other things that the act denied to him the equal protection of the laws and hence was contrary to the Fourteenth Amendment of the Constitution of the United States. Wiley E. Jones, the attorney general of the State, and W. G. Gilmore, the county attorney of Cochise County, were made defendants in addition to the employer Truax, upon the allegation that these officers would prosecute the employer unless he complied with its terms and that in order to avoid such a prosecution the employer was about to discharge the complainant. Averring that there was no adequate remedy at law, the bill sought a decree declaring the act to be unconstitutional and restraining action thereunder.

Soon after the bill was filed, an application was made for an injunction *pendente lite*. After notice of this application, Truax was arrested for a violation of the act, upon a complaint prepared by one of the assistants in the office of the County Attorney of Cochise County, and as it appeared that by reason of the determination of the officers to enforce the act there was danger of the complainant's immediate discharge from employment, the district judge granted a temporary restraining order.

The allegations of the bill were not controverted. The

defendants joined in a motion to dismiss upon the grounds
(1) that the suit was against the State of Arizona without
its consent; (2) that it was sought to enjoin the enforce-
ment of a criminal statute; (3) that the bill did not state
facts sufficient to constitute a cause of action in equity;
and (4) that there was an improper joinder of parties and
the plaintiff was not entitled to sue for the relief asked.
The application for an interlocutory injunction and the
motion to dismiss were then heard before three judges,
as required by § 266 of the Judicial Code. The motion
to dismiss was denied and an interlocutory injunction
restraining the defendants, the attorney general and
the county attorney, and their successors and assistants,
from enforcing the act against the defendant Truax, was
granted. 219 Fed. Rep. 273. This direct appeal has
been taken.

As the bill is framed upon the theory that the act is un-
constitutional, and that the defendants who are public of-
ficers concerned with the enforcement of the laws of the
State are about to proceed wrongfully to the complainant's
injury through interference with his employment, it is es-
tablished that the suit cannot be regarded as one against
the State. Whatever doubt existed in this class of cases
was removed by the decision in *Ex parte Young*, 209 U. S.
123, 155, 161, which has repeatedly been followed. *Ludwig
v. West. Un. Tel. Co.*, 216 U. S. 146; *West. Un. Tel. Co.* v.
*Andrews*, 216 U. S. 165; *Herndon* v. *C., R. I. & P. Ry.*, 218
U. S. 135, 155; *Hopkins* v. *Clemson College*, 221 U. S. 636,
643–645; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 607,
620; *Home Tel. & Tel. Co.* v. *Los Angeles*, 227 U. S. 278,
293.

It is also settled that while a court of equity, generally
speaking, has 'no jurisdiction over the prosecution, the
punishment or the pardon of crimes or misdemeanors'
(*In re Sawyer*, 124 U. S. 200, 210) a distinction obtains,
and equitable jurisdiction exists to restrain criminal pros-

ecutions under unconstitutional enactments, when the
prevention of such prosecutions is essential to the safe-
guarding of rights of property. *Davis & Farnum Mfg. Co.
v. Los Angeles*, 189 U. S. 207, 218; *Dobbins v. Los Angeles*,
195 U. S. 223, 241; *Ex parte Young, supra; Philadelphia Co.
v. Stimson, supra*, p. 621. The right to earn a livelihood
and to continue in employment unmolested by efforts to en-
force void enactments should similarly be entitled to pro-
tection in the absence of adequate remedy at law. It is said
that the bill does not show an employment for a term, and
that under an employment at will the complainant could
be discharged at any time for any reason or for no reason,
the motive of the employer being immaterial. The con-
clusion, however, that is sought to be drawn is too broad.
The fact that the employment is at the will of the parties,
respectively, does not make it one at the will of others.
The employé has manifest interest in the freedom of the
employer to exercise his judgment without illegal inter-
ference or compulsion and, by the weight of authority, the
unjustified interference of third persons is actionable al-
though the employment is at will. *Moran v. Dunphy*, 177
Massachusetts, 485, 487; *Berry v. Donovan*, 188 Massachu-
setts, 353; *Brennan v. United Hatters*, 73 N. J. Law, 729,
743; *Perkins v. Pendleton*, 90 Maine, 166; *Lucke v. Cloth-
ing Cutters*, 77 Maryland, 396; *London Guar. & Acc. Co. v.
Horn*, 101 Ill. App. 355, *S. C.*, 206 Illinois, 493; *Chipley v.
Atkinson*, 23 Florida, 206; *Blumenthal v. Shaw*, 23 C. C. A.
290, *S. C.*, 77 Fed. Rep. 954. It is further urged that
the complainant cannot sue save to redress his own
grievance (*McCabe v. Atchison, Topeka & Santa Fe Ry.*,
235 U. S. 151, 162); that is, that the servant cannot com-
plain for the master, and that it is the master who is sub-
ject to prosecution, and not the complainant. But the act
undertakes to operate directly upon the employment of
aliens and if enforced would compel the employer to dis-
charge a sufficient number of his employés to bring the

alien quota within the prescribed limit. It sufficiently appears that the discharge of the complainant will be solely for the purpose of meeting of the requirements of the act and avoiding threatened prosecution under its provisions. It is, therefore, idle to call the injury indirect or remote. It is also entirely clear that unless the enforcement of the act is restrained the complainant will have no adequate remedy, and hence we think that the case falls within the class in which, if the unconstitutionality of the act is shown, equitable relief may be had.

The question then is whether the act assailed is repugnant to the Fourteenth Amendment. Upon the allegations of the bill, it must be assumed that the complainant, a native of Austria, has been admitted to the United States under the Federal law. He was thus admitted with the privilege of entering and abiding in the United States, and hence of entering and abiding in any State in the Union. (See *Gegiow* v. *Uhl, Commissioner*, decided October 25, 1915, *ante*, p. 3.) Being lawfully an inhabitant of Arizona, the complainant is entitled under the Fourteenth Amendment to the equal protection of its laws. The description—'any person within its jurisdiction'—as it has frequently been held, includes aliens. 'These provisions,' said the court in *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369 (referring to the due process and equal protection clauses of the Amendment), 'are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws.' See also *Wong Wing* v. *United States*, 163 U. S. 228, 242; *United States* v. *Wong Kim Ark*, 169 U. S. 649, 695. The discrimination defined by the act does not pertain to the regulation or distribution of the public domain, or of the common property or resources of the people of the State, the enjoyment of which may be limited to its citizens as against

both aliens and the citizens of other States. Thus in
*McCready* v. *Virginia*, 94 U. S. 391, 396, the restriction
to the citizens of Virginia of the right to plant oysters
in one of its rivers was sustained upon the ground that
the regulation related to the common property of the
citizens of the State, and an analogous principle was in-
volved in *Patsone* v. *Pennsylvania*, 232 U. S. 138, 145, 146,
where the discrimination against aliens upheld by the
court had for its object the protection of wild game within
the States with respect to which it was said that the State
could exercise its preserving power for the benefit of its
own citizens if it pleased. The case now presented is not
within these decisions, or within those relating to the
devolution of real property (*Hauenstein* v. *Lynham*, 100
U. S. 483; *Blythe* v. *Hinckley*, 180 U. S. 333, 341, 342); and
it should be added that the act is not limited to persons
who are engaged on public work or receive the benefit of
public moneys. The discrimination here involved is im-
posed upon the conduct of ordinary private enterprise.

The act, it will be observed, provides that every em-
ployer (whether corporation, partnership, or individual)
who employs more than five workers at any one time
'regardless of kind or class of work, or sex of workers' shall
employ 'not less than eighty per cent. qualified electors or
native born citizens of the United States or some sub-
division thereof.' It thus covers the entire field of in-
dustry with the exception of enterprises that are relatively
very small. Its application in the present case is to em-
ployment in a restaurant the business of which requires
nine employés. The purpose of an act must be found in
its natural operation and effect (*Henderson* v. *Mayor*,
92 U. S. 259, 268; *Bailey* v. *Alabama*, 219 U. S. 219, 244),
and the purpose of this act is not only plainly shown by its
provisions, but it is frankly revealed in its title. It is
there described as 'An act to protect the citizens of the
United States in their employment against non-citizens

of the United States, in Arizona.' As the appellants rightly say, there has been no subterfuge. It is an act aimed at the employment of aliens, as such, in the businesses described. Literally, its terms might be taken to include with aliens those naturalized citizens who by reason of change of residence might not be at the time qualified electors in any subdivision of the United States, but we are dealing with the main purpose of the statute, definitely stated, in the execution of which the complainant is to be forced out of his employment as a cook in a restaurant, simply because he is an alien.

It is sought to justify this act as an exercise of the power of the State to make reasonable classifications in legislating to promote the health, safety, morals and welfare of those within its jurisdiction. But this admitted authority, with the broad range of legislative discretion that it implies, does not go so far as to make it possible for the State to deny to lawful inhabitants, because of their race or nationality, the ordinary means of earning a livelihood. It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure. *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746, 762; *Barbier* v. *Connolly*, 113 U. S. 27, 31; *Yick Wo* v. *Hopkins, supra; Allgeyer* v. *Louisiana*, 165 U. S. 578, 589, 590; *Coppage* v. *Kansas*, 236 U. S. 1, 14. If this could be refused solely upon the ground of race or nationality, the prohibition of the denial to any person of the equal protection of the laws would be a barren form of words. It is no answer to say, as it is argued, that the act proceeds upon the assumption that 'the employment of aliens unless restrained was a peril to the public welfare.' The discrimination against aliens in the wide range of employments to which the act relates is made an end in itself and thus the authority to deny to aliens, upon the mere

fact of their alienage, the right to obtain support in the ordinary fields of labor is necessarily involved. It must also be said that reasonable classification implies action consistent with the legitimate interests of the State, and it will not be disputed that these cannot be so broadly conceived as to bring them into hostility to exclusive Federal power. The authority to control immigration— to admit or exclude aliens—is vested solely in the Federal Government. *Fong Yue Ting* v. *United States*, 149 U. S. 698, 713. The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the State would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work. And, if such a policy were permissible, the practical result would be that those lawfully admitted to the country under the authority of the acts of Congress, instead of enjoying in a substantial sense and in their full scope the privileges conferred by the admission, would be segregated in such of the States as chose to offer hospitality.

It is insisted that the act should be supported because it is not 'a total deprivation of the right of the alien to labor'; that is, the restriction is limited to those businesses in which more than five workers are employed, and to the ratio fixed. It is emphasized that the employer in any line of business who employs more than five workers may employ aliens to the extent of twenty per cent. of his employés. But the fallacy of this argument at once appears. If the State is at liberty to treat the employment of aliens as in itself a peril requiring restraint regardless of kind or class of work, it cannot be denied that the authority exists to make its measures to that end effective. *Otis* v. *Parker*, 187 U. S. 606; *Silz* v. *Hesterburg*, 211 U. S. 31; *Purity Co.* v. *Lynch*, 226 U. S. 192. If the restriction to twenty per cent. now imposed is maintainable the State undoubtedly has the power if it sees fit to make the per-

centage less.   We have nothing before us to justify the
limitation to twenty per cent. save the judgment ex-
pressed in the enactment, and if that is sufficient, it is
difficult to see why the apprehension and conviction thus
evidenced would not be sufficient were the restriction
extended so as to permit only ten per cent. of the employés
to be aliens or even a less percentage, or were it made
applicable to all businesses in which more than three
workers were employed instead of applying to those em-
ploying more than five.   We have frequently said that the
legislature may recognize degrees of evil and adapt its
legislation accordingly (*St. Louis Consol. Coal Co.* v. *Illi-
nois,* 185 U. S. 203, 207; *McLean* v. *Arkansas,* 211 U. S.
539, 551; *Miller* v. *Wilson,* 236 U. S. 373, 384); but under-
lying the classification is the authority to deal with that
at which the legislation is aimed.   The restriction now
sought to be sustained is such as to suggest no limit to
the State's power of excluding aliens from employment if
the principle underlying the prohibition of the act is con-
ceded.   No special public interest with respect to any
particular business is shown that could possibly be deemed
to support the enactment, for as we have said it relates
to every sort.   The discrimination is against aliens as
such in competition with citizens in the described range
of enterprises and in our opinion it clearly falls under the
condemnation of the fundamental law.

The question of rights under treaties was not expressly
presented by the bill, and, although mentioned in the
argument, does not require attention in view of the in-
validity of the act under the Fourteenth Amendment.

*Order affirmed.*


MR. JUSTICE McREYNOLDS dissenting.


I am unable to agree with the opinion of the majority
of the court.   It seems to me plain that this is a suit against

a State to which the Eleventh Amendment declares "the judicial power of the United States shall not be construed to extend." *Fitts* v. *McGhee*, 172 U. S. 516. If *Ex parte Young*, 209 U. S. 123, and the cases following it support the doctrine that Federal courts may enjoin the enforcement of criminal statutes enacted by state legislatures whenever the enjoyment of some constitutional right happens to be threatened with temporary interruption, they should be ·overruled in that regard. The simple, direct language of the Amendment ought to be given effect, not refined away.

That the challenged act is invalid I think admits of no serious doubt.