[Crim. No. 2394. In Bank.—September 12, 1921.]

In the Matter of GUILLERMO D. KOTTA on Habeas Corpus.

[1] TAXATION—ALIEN POLL TAX LAW—UNCONSTITUTIONALITY OF.—The alien poll tax law of California cannot be enforced, for the reason that by its enforcement the state of California would deny to persons within its jurisdiction the equal protection of its laws, in violation of the provision of section 1 of the fourteenth amendment to the constitution of the United States that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

[2] ID.—CONSTRUCTION OF FOURTEENTH AMENDMENT OF UNITED STATES CONSTITUTION—MEANING OF WORD "PERSON."—The word "person"

as used in the fourteenth amendment to the constitution of the United States, providing "nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," includes aliens, and the provisions are universal in their application to all persons within the territorial jurisdiction, without any regard to any difference of race, of color, or of nationality.

[3] Id.—Taxation—Unequal Burdens.—Tax laws that avowedly lay a different and higher burden upon a portion only of all those similarly situated, that is, all those among whom no difference which bears a reasonable and just relation to the matter exists, exempting the remaining portion from the burden, are not "equal laws," and their enforcement would deprive the persons so burdened of the equal protection of the laws guaranteed by the federal constitution.

[4] Id.—Equal Protection of Laws—Improper Classification.—In view of section 1 of the fourteenth amendment of the United States constitution, relative to equal protection of the laws, the classification of the inhabitants of a state, for the purpose of laying a poll tax, into aliens and citizens, the former, but not the latter, being taxed, is not a proper classification, and is forbidden by that section.

APPLICATION for Writ of Habeas Corpus to discharge petitioner held in custody for failure to register under the alien poll tax law. Petitioner discharged.

The facts are stated in the opinion of the court.

M. A. Thomas, Albert H. Elliot and Guy C. Calden for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

ANGELLOTTI, C. J.—The petitioner, an alien male inhabitant of the state of California of the age of about forty-eight years, and a citizen of the United States of Mexico, is held in custody by the chief of police of the city and county of San Francisco under a complaint charging him with failure to register as required by the terms of the act known as the alien poll tax law of 1921, discussed in the

---

4. Constitutionality of poll tax as affected by exemptions therefrom, note, 13 L. R. A. (N. S.) 901.

opinion filed in the *Matter of Terui, on Habeas Corpus, ante,*
p. 20, [17 A. L .R. 630, 200 Pac. 954]. His case is the same
as that of Terui in all material respects, except that he claims
no protection under any treaty. It is said by his counsel that
there is no treaty provision in any treaty between the United
States and the United States of Mexico that affords protection
against such discrimination against resident aliens in the mat-
ter of taxation as is created by the Alien Poll Tax Act. His
sole claim is that this act is void as to all alien inhabitants
of the state, in that it denies to persons within the jurisdiction
of the state the equal protection of the laws, in violation of
a provision of section 1 of article XIV, amendments to the
constitution of the United States. The section referred to is
as follows: ''All persons born or naturalized in the United
States and subject to the jurisdiction thereof, are citizens of
the United States and of the State wherein they reside.
No state shall make or enforce any law which shall abridge
the privileges or immunities of citizens of the United States;
nor shall any state deprive any person of life, liberty, or
property, without due process of law, *nor deny to any per-*
*son within its jurisdiction the equal protection of the laws.''*
(Italics are ours.)

It is upon the portion of this section that we have itali-
cized that the claim of petitioner is based.

All that we have said with relation to this legislation
(the Alien Poll Tax Act of 1921) in our opinion in the
Terui case is applicable in this case and need not be re-
peated here, further than to say that the law was enacted
solely in the exercise of the power of taxation for the
purpose of raising revenue for state purposes, containing
no provision whatever attributable to the exercise of the
police power of regulation, and that it imposes on alien in-
habitants of the state between certain ages, solely because
of their alien character, a tax different in kind from and
additional to the taxes required to be paid by all inhabi-
tants, citizens, and aliens alike. No such tax or its equiva-
lent is imposed by our laws on any except alien inhabitants.
The law thus imposes an additional burden in the matter
of taxation upon such aliens solely because of their alien
character, and in this way discriminates against them.

[1] This being the situation, in view of the decisions of
the supreme court of the United States, there is no escape

from the conclusion that the alien poll tax law cannot be enforced, for the reason that by its enforcement the state of California would deny to persons within its jurisdiction the equal protection of its laws, in violation of the provision of section 1 of the fourteenth amendment that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

[2] It is settled that the word "person" as used in this amendment includes aliens. It was said in *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369, [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, 1070, see, also, Rose's U. S. Notes]: "The fourteenth amendment to the constitution is not confined to the protection of citizens. It says: 'Nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any difference of race, of color, or of nationality." The rights of subjects of the emperor of China were here being discussed. In *Truax* v. *Raich*, 239 U. S. 33, [Ann. Cas. 1917B, 283, L. R. A. 1916D, 545, 60 L. Ed. 131, 36 Sup. Ct. Rep. 7, see, also, Rose's U. S. Notes], decided November 1, 1915, the rights of an alien who was a citizen of Austria and resident of the state of Arizona were involved. The supreme court, speaking through Mr. Justice Hughes, said (239 U. S. 39, [Ann. Cas. 1917B, 283, L. R. A. 1916D, 545, 60 L. Ed. 131, 36 Sup. Ct. Rep. 9]): "Upon the allegations of the bill it must be assumed that the complainant, a native of Austria, has been admitted to the United States under the federal law. He was thus admitted with the privilege of entering and abiding in the United States, and hence of entering and abiding in any state in the Union. Being lawfully an inhabitant of Arizona, the complainant is entitled under the fourteenth amendment to the equal protection of its laws. The description—'any person within its jurisdiction'—as it has frequently been held, includes aliens." The court then quoted approvingly the portion of the opinion in *Yick Wo* v. *Hopkins, supra,* that we have quoted above. (See, also, *Fraser* v. *McConway,* 82 Fed. 257.) Petitioner, therefore, though an alien inhabitant of California, is by

this provision of the federal constitution guaranteed the equal protection of the laws of California.

The meaning of "the equal protection of the laws" thus guaranteed by the federal constitution to every person within the jurisdiction of a state is not left in doubt by the decisions in so far as such an act as the one here involved is concerned. In *Yick Wo* v. *Hopkins, supra,* it is said that "the equal protection of the laws is a pledge to the protection of equal laws." This was approvingly quoted in *Truax* v. *Raich, supra.* In *Barbier* v. *Connolly,* 113 U. S. 27, 31, [28 L. Ed. 923, 5 Sup. Ct. Rep. 357, 359, see, also, Rose's U. S. Notes], the supreme court of the United States declared that it was undoubtedly intended thereby "that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; *that no greater burdens should be laid upon one than are laid upon others in the same calling and condition,"* etc. (Italics ours.) As is shown by the opinion in *Yick Wo* v. *Hopkins, supra,* the legislation enacted by Congress for the enforcement of the amendment, popularly known as the civil rights statutes, declared that "all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit · of all laws and proceedings for the security of persons and property as is enjoyed by white citizens *and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other."* (Italics ours.) What is said in *Barbier* v. *Connolly, supra,* and the federal statute just quoted sufficiently shows the subject matter as to which the alien inhabitant is given by the constitution "a pledge of the protection of equal laws," laws free from discrimination based solely on his alien character. Stated very generally, the requirement is for equal protection and security for all,

citizens and aliens alike, under like circumstances, in the enjoyment of their personal and civil rights, and in the imposition of burdens, such as penalties, taxes, etc. As is stated in the opinion in *Truax* v. *Raich, supra,* the constitutional guaranty, in so far as an alien is concerned, has no application to laws of a state relating to such matters as the regulation or distribution of the public domain, or of the common property or resources of the people of the state, or, it is suggested, laws relating to the devolution of the real property therein. (See *Truax* v. *Raich,* 239 U. S. 39, 40, [Ann. Cas. 1917B, 283, L. R. A. 1916D, 545, 60 L. Ed. 131, 36 Sup. Ct. Rep. 7].) But that it does guarantee the alien "equal laws" in the matter of the imposition of such burdens on him and his property as taxes seems clear. No question of discriminatory taxation laws was directly involved in the decisions of the supreme court that we have cited, but the rule of these decisions is clearly applicable to such a case. In *The Railroad Tax Cases,* 13 Fed. 722, Justice Field, in his opinion in the circuit court, said: "The fourteenth amendment to the constitution, in declaring that no state shall deny to any person within its jurisdiction the equal protection of the laws, imposes a limitation upon the exercise of all the powers of the state which can touch the individual or his property, including among them that of taxation. Whatever the state may do, it cannot deprive anyone within its jurisdiction of the equal protection of the laws. . . . Unequal exactions in every form, or under any pretense, are absolutely forbidden; and of course unequal taxation, for it is in that form that oppressive burdens are usually laid." (See, also, *Fraser* v. *McConway etc. Co.,* 82 Fed. 257; *Juniata Limestone Co.* v. *Fagley,* 187 Pa. St. 193, [67 Am. St. Rep. 579, 42 L. R. A. 442, 40 Atl. 977].) This is so clearly true, in view of the general principles declared by the United States supreme court in the cases we have cited, as not to require discussion. [3] Tax laws that avowedly lay a different and higher burden upon a portion only of all those similarly situated, that is, all those among whom no difference "which bears a reasonable and just relation" to the matter exists (*Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, 155, [41 L. Ed. 666, 17 Sup. Ct. Rep. 255, 257, see, also, Rose's U. S. Notes]), exempting the remaining portion from the burden,

are not "equal laws," and their enforcement would deprive the persons so burdened of the equal protection of the laws. We do not see how this can be fairly questioned.

That the act does this very thing is clear. The sole distinction between the male inhabitants of California so burdened with the poll tax and those not so burdened, in so far as all matters material to imposition of the tax is concerned, is that the former are aliens and the latter citizens. This is the sole basis of the attempted classification. As was said in *Gulf etc. Ry. Co.* v. *Ellis, supra,* (165 U. S. 165, [41 L. Ed. 666, 17 Sup. Ct. Rep. 261, see, also, Rose's U. S Notes]): "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection." [4] In the case at bar the only difference is such that, in view of the language of section 1 of the fourteenth amendment, relative to equal protection of the laws, it cannot in the nature of things constitute a proper basis for classification, for the plain effect of that section is to forbid any distinction in such a matter as this based on that fact alone.

It follows from what we have said that the alien poll tax law must be held to be in violation of the terms of section 1 of the fourteenth amendment of the constitution of the United States, which by the express terms of section 2 of article VI thereof is declared to be "the supreme law of the land," binding on the judges in every state, "anything in the constitution or laws of any state to the contrary notwithstanding." It is therefore ineffective for any purpose.

The petitioner is discharged from custody.

Shaw, J., Lennon, J., Wilbur, J., Shurtleff, J., Sloane, J., and Lawlor, J., concurred.