## ARROWSMITH v. VOORHIES, Atty. Gen. of Michigan, et al.

### No. 4798.

District Court, E. D. Michigan.

Dec. 9, 1931.

Levin, Levin & Dill and Patrick H. O'Brien, all of Detroit, Mich. (Theodore Levin and Fred M. Butzel, both of Detroit, Mich., and Max J. Kohler, of New York City, of counsel), for plaintiff.

Paul W. Voorhies, Atty. Gen., and K. F. Clardy, Asst. Atty. Gen., for defendants.

Before DENISON, Circuit Judge, and SIMONS, and O'BRIEN, District Judges.

O'BRIEN, District Judge.

Plaintiff, George Arrowsmith, is a subject of Great Britain and a resident of the state of Michigan. He is in the contracting business, and employs people of foreign birth, and at times has hired himself out as an employee of others in the same state. He seeks injunctive relief against the enforcement of an act passed by the Legislature of the state of Michigan during the Session of 1931, approved May 29, 1931 and entitled "A Bill defining a legal resident of this state," etc. (Pub. Acts 1931, No. 241), on the ground that it is repugnant to the provisions of the Federal and the state Constitutions.

The following sections disclose the purpose and scope of the act:

"Section 1. For the purpose of maintaining economic, industrial and political welfare of this state, a legal resident of the state, as distinguished from a citizen, is defined as follows:

"(a) Any person who was born in the United States of America or in a territory thereof as provided by the laws of the United States;

"(b) Any person of foreign birth, who entered the United States of America prior to the adoption of measures limiting or restricting immigration, who does not come within the classification 'Undesirable alien' as defined by the laws of the United States;

"(c) Any person of foreign birth, who since the adoption of measures limiting or restricting immigration, entered the United States of America through any regular office of the United States bureau of immigration, under a lawfully acquired and lawfully employed passport or such other credentials as from time to time have been required and recognized by the laws of the United States, who does not come within the classification 'Undesirable alien' as defined by the laws of the United States.

"Sec. 2. Any person of foreign birth, who since the adoption of measures limiting or restricting immigration entered the United States of America in any manner except as described in section one hereof, is declared to have entered the United States illegally and is hereby disqualified from establishing or maintaining legal residence in this state.

"Sec. 3. Any person of foreign birth, who comes within the classification 'Undesirable alien' as defined by the laws of the United States, is hereby disqualified from establishing or maintaining legal residence in this state and from sojourning at all within the territorial limits of the state.

"Sec. 4. Any person of foreign birth, who entered the United States of America illegal-

ly or one who comes within the classification 'Undesirable alien' as defined by the laws of the United States, and is now within the confines of the state is hereby declared to have entered the state illegally and to be subject to deportation as in this act provided.

"Sec. 5. Any person of foreign birth, who entered the United States of America illegally or one who comes within the classification 'Undesirable alien' as defined by the laws of the United States and hereafter seeks to enter this state shall when detected be denied admission at its borders or if detected after entering the state, shall be subject to deportation as in this act provided.

"Sec. 6. Any person of foreign birth, who as in this act provided is disqualified from establishing and maintaining legal residence in this state, is prohibited from having employment or engaging in business within the state except as hereinafter in the penal section of this act provided.

"Sec. 7. No person, firm, corporation or association, legally resident or qualified to do business in this state, shall have in his or its employ any person of foreign birth who as in this act provided is disqualified from establishing or maintaining legal residence in the state.

"Sec. 8. No person, firm, corporation or association, legally resident or qualified to do business in this state, shall associate in business as a partner or otherwise in this state with any person who as in this act provided is disqualified from establishing or maintaining legal residence in the state."

The plaintiff alleges that he was lawfully admitted to the United States, but that it is impossible for him to furnish the proof necessary under the act, and that he cannot show that he is not an "Undesirable alien" as defined by the act, and that he is unable to obtain the proof requisite in order to register thereunder. He alleges that, because of his inability to comply with the provisions of the act, he is by its terms subject to deportation, fine, and imprisonment, and contends the act under consideration is unconstitutional, in that it is in violation of, among others, section 8 of article 1 of the Federal Constitution.

■ The initial question involved is the right of the plaintiff to maintain this action. Upon the facts set up in the bill of complaint and supporting affidavits, we find that this case is maintainable under the decisions of the Supreme Court in Ex Parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; and Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, in which the right of a private individual to initiate suits against state officials is sustained.

In the Truax Case the court said: "A suit by an alien to restrain the attorney general and county attorney from enforcing to his injury the Arizona anti-alien labor law of December 14, 1914, which he asserts is repugnant to the Federal Constitution, cannot be regarded as a suit against the state."

■ Coming then directly to the essence of the cause, the plaintiff contends that the act under consideration is in violation of section 8, article 1, of the Constitution of the United States, which grants to Congress the power to regulate commerce with foreign nations and among the several states.

There have been numerous attempts upon the part of states to regulate commerce and the status of aliens upon the theory that such legislation is sanctioned by the police power of the state.

The Supreme Court, in Henderson v. Mayor of New York, 92 U. S. 259, 271, 23 L. Ed. 543, said:

"This power, frequently referred to in the decisions of this court, has been, in general terms, somewhat loosely called the police power. It is not necessary for the course of this discussion to attempt to define it more accurately than it has been defined already. It is not necessary, because whatever may be the nature and extent of that power, where not otherwise restricted, no definition of it, and no urgency for its use, can authorize a State to exercise it in regard to a subject-matter which has been confided exclusively to the discretion of Congress by the Constitution. * * *

"We are of opinion that this whole subject has been confided to Congress by the Constitution; that Congress can more appropriately and with more acceptance exercise it than any other body known to our law, state or national; that by providing a system of laws in these matters, applicable to all ports and to all vessels, a serious question, which has long been matter of contest and complaint, may be effectually and satisfactorily settled."

And so likewise in the case of Chy Lung v. Freeman, 92 U. S. 275, 280, 23 L. Ed. 550, the court said: "The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States. It has the power to regulate commerce with foreign

nations; the responsibility for the character of those regulations, and for the manner of their execution, belongs solely to the national government. If it be otherwise, a single State can, at her pleasure, embroil us in disastrous quarrels with other nations."

In interpreting the scope and powers of the federal government under this section of the Constitution, it was said in Ex parte Ah Cue, 101 Cal. 197, 35 P. 556, 557: "The main purpose of this act, as shown by its title and by its provisions, is to prohibit Chinese persons from coming into the state, and also to prescribe terms and conditions upon which those residing within the state shall be permitted to remain or travel between different points in the state. The power thus attempted to be exercised is one which belongs exclusively to the general government by virtue of its authority to regulate commerce with foreign nations * * * relating, as it does, to a subject-matter in which all the people of the United States are concerned, and not alone those of the state of California."

This line of reasoning has been followed in innumerable other decisions, so that this court is of the opinion that, the power to regulate the terms and conditions under which aliens may live in any of the several states having been given by the Constitution to the federal government, and that government having exercised it, the right of the federal government is paramount and exclusive, and the act under consideration is an unlawful invasion of it.

This court, therefore, is of the opinion that the act passed by the Legislature of the state of Michigan is unconstitutional and invalid, because it seeks to usurp the power of government, exclusively vested by the Constitution in Congress, over the control of aliens and immigration.

There are many other reasons urged by the plaintiff as to the unconstitutionality and invalidity of the act under consideration, and, while this court has considered them, we are satisfied to dispose of the case upon the sole ground that the admission and exclusion of aliens are a subject within the exclusive control of Congress, and that this statute cannot be carried out according to its complete intent without trespassing on that control. Whether and to what extent other features of the statute might be thought sustainable, there is no reason to discuss. They are not separable.

In consonance with this opinion, therefore, an order may be entered granting the temporary injunction sought by plaintiff and denying the motion of defendant to dismiss the bill of complaint.

DENISON, Circuit Judge, and SIMONS, District Judge, concur in the result.