**DAVIDOWITZ v. HINES, Secretary of Labor and Industry, et al.**

No. 201.

District Court, M. D. Pennsylvania.

Nov. 30, 1939.

Isidor Ostroff, Herman Steerman, and Harold Jethro Budd, all of Philadelphia, Pa., and Ralph P. Needle and Joseph S. Needle, both of Scranton, Pa., for plaintiffs.

A. Harry·Levitan, Francis Fisher Kane, Francis R. Taylor, Louis F. McCabe, and Leopold Mamolen, all of Philadelphia, Pa., for associations allowed to file briefs as friends of the Court.

Claud T. Reno, Atty. Gen. and William S. Rial and M. Louise Rutherford, Deputy Attys. Gen., for defendants.

Before BIGGS and JONES, Circuit Judges, and WATSON, District Judge.

BIGGS, Circuit Judge.

The General Assembly of the Commonwealth of Pennsylvania has enacted a statute approved June 21, 1939, ·P.L. 652, 35 P.S.Pa. § 1801 et seq. requiring certain aliens to register annually with the Department of Labor and Industry of the Commonwealth and to carry and, upon demand of any police officer or agent of the Department of Labor and Industry, to exhibit identification cards.

This Act, No. 304 of the 163rd General Assembly,[1] requires such registration to be made by these aliens on or before the first day of January, 1940 and during the month of December, 1939. Certain aliens are excepted from the operation of the Act, including those residing in the Commonwealth who are father or mother of a son or daughter who serv-- ed in the service of the United States during any war, or those who have filed declarations of intention to become American citizens within a period of three years and who have not been convicted of any criminal offense in any court of record, or who have. resided continuously in the United States since December 31, 1908. The Act provides that each registration

---

[1] The Acts of the Session have not yet been compiled in pamphlet form.

shall show the name, age, address and occupation of the alien, the name of his or her employer, the characteristics or appearance of the alien and such other data and details as the Department of Labor and Industry shall direct. The Act provides also that no motor vehicle shall be registered in the name of any non-exempt alien and that a license to operate an automobile shall not be issued to any non-exempt alien except upon the exhibition of his identification card for the current registration period.

Drastic punishments are provided for those aliens who are required to register and fail to do so and lesser penalties are prescribed for the non-exempt alien who fails to carry with him his identification card or refuses to exhibit it upon proper demand. A copy of the Act is set out upon the margin of this opinion.[2]

The suit at bar is brought by the plaintiffs to test the validity of the Act. They pray for an injunction against the defendants, all officers of the Commonwealth of Pennsylvania, prohibiting the enforce-

---

[2] "An Act Requiring certain aliens to register with the Department of Labor and Industry and to carry and, upon proper demand, to exhibit identification cards; prohibiting the issuing of certain registrations and licenses to aliens under certain circumstances; and prescribing penalties.

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

"Section 1. On or before the first day of January, one thousand nine hundred and forty, and during the month of December, of the year one thousand nine hundred and thirty-nine and of each year thereafter, every alien, eighteen (18) years or over, residing in this Commonwealth, who is not a father or mother of a son or daughter who has served in the service of the United States during any war, or who has not filed an application declaring his or her intention to become an American citizen, or who having filed such application, shall not have become naturalized within a period of three years thereafter, except such aliens who have resided continuously in the United States since December thirty-first, one thousand nine hundred and eight, and who have never been convicted of any criminal offence in any court of record, shall register with the Department of Labor and Industry, on forms to be prescribed and furnished by the department; and every such alien becoming a resident of this Commonwealth after the first day of January, one thousand nine hundred and forty, shall, in like manner, register with the department within thirty days after becoming such resident. Such registration shall show the name, age, address, occupation, name of employer, characteristics of appearance, name of wife or husband, if any, of such alien member, names and ages of all children under eighteen (18) residing with him or her, and, if not his or her own, the names of their parents,

and such other information and details as the department shall direct.

"Section 2. For each original registration and for each annual registration thereafter, the person registered shall pay to the department a registration fee of one dollar ($1.00), and shall receive an alien identification card which he or she shall carry at all times and shall exhibit upon demand by any police officer or agent of the Department of Labor and Industry displaying evidence of his authority.

"Section 3. No motor vehicle shall be registered in the name of any alien, nor shall any license to operate a motor vehicle be issued to any alien except those exempted under the provisions of section one of this act, unless such alien shall exhibit an alien identification card for the current registration period.

"Section 4. The Department of Labor and Industry shall classify such registrations in such manner as shall best serve the purpose of ready reference, and shall furnish a copy thereof to the Pennsylvania Motor Police. All such records shall be retained for a period of at least three years. The department shall have power to make and enforce rules and regulations to carry into effect and enforce the provisions of this act.

"Section 5. Every alien, except those exempted under the provisions of section one of this act, over the age of eighteen (18), who has not declared his or her intention to become an American citizen, and who fails to register as provided in this act within any of the periods required hereby, shall, upon summary conviction thereof, be sentenced to pay a fine of not more than one hundred dollars ($100.00) or to undergo imprisonment for not more than sixty (60) days, or both.

"Every alien required to be registered, who shall fail to carry his or her alien identification card or who shall fail or refuse to exhibit the same when properly

ment of the Act. The suit is framed as a class bill brought by the plaintiffs on behalf of "residents, citizens and taxpayers" of Pennsylvania.

The plaintiff, Davidowitz, is a naturalized citizen of the United States, a resident of Philadelphia and a taxpayer of the Commonwealth of Pennsylvania. The complaint alleges that he is of foreign appearance and speaks English with a noticeable foreign accent and therefore despite his naturalization he will be subjected to constant questioning by police officers, will be compelled to demonstrate constantly that he is not an alien required to carry a registration card, will be unjustly discriminated against, constantly embarrassed and will have to carry proof of his naturalization with him continuously.

The plaintiff, Travaglini, is an alien who has resided in the City of Philadelphia, since his arrival in the United States from Italy in 1920. The complaint sets forth sufficient facts to show that he is not included within the exemptions of the Act. Travaglini contends that the Act encroaches upon a field confided by the Constitution to the Federal Government and that its enforcement will deny him equal protection of the laws. He states that he will be discriminated against also because by the terms of the Act the Secretary of Revenue must refuse to issue to him either driver's license or owner's certificate for a motor vehicle except upon the production of his registration card and that

this will interfere "* * * with his right as a resident alien of * * * Pennsylvania to obtain employment requiring the use and operation of an automobile."

The defendants have filed an answer admitting all well pleaded facts. The plaintiffs have moved for judgment upon the pleadings in accordance with the provisions of Rule 12 (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

### Jurisdiction.

### *As to the Plaintiff, Travaglini.*

Jurisdiction is vested in this court by virtue of the provisions of Section 266 of the Judicial Code, as amended, 28 U.S.C.A. § 380,[3] and of Section 24 (14) of the Judicial Code as amended by 36 Stat. 1092, 28 U.S.C.A. § 41(14) providing that the District Courts of the United States shall have original jurisdiction of all suits at law or in equity "* * * to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States." Hague v. Committee for Industrial Organization, 370 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

required to do so, shall, upon summary conviction thereof, be sentenced to pay a fine of not more than ten dollars ($10.-00) or to undergo imprisonment for not more than ten (10) days, or both.

"Section 6. (a) Summary proceedings under this act must be commenced by the filing of information before a justice of the peace, alderman or a magistrate, which information must be filed in the name of the Commonwealth, and within not less than five days nor more than ten days the magistrate, alderman or justice of the peace shall send by registered mail, to the person charged, at the address of such person, a notice in writing, of the filing of the information, together with a copy thereof, and a notice to appear within ten (10) days of the date of the written notice. . If the person named in the information shall not voluntarily appear within ten (10) days of the date of the written notice, a warrant may then

be issued and may be served by a peace officer having authority to serve warrants.

"(b) The peace officer, after serving such warrant, shall take the defendant before a magistrate within the municipality in which the defendant is found, who shall take bail either for the defendant's appearance before the magistrate who issued the warrant or for his appearance for trial in the proper court if a summary hearing is waived.

"Section 7. All acts and parts of acts inconsistent herewith are hereby repealed."

3 Section 266 of the Judicial Code as amended provides that three judges, one of whom shall be a Justice of the Supreme Court or a Circuit Judge, shall sit to hear an injunction suit by which it is sought to suspend or restrain the operation of a state statute.

■ The Act requires non-exempt aliens to be registered no later than January 1, 1940. Registration of aliens is to commence upon December 1, 1939. The damage threatened to Travaglini therefore is imminent. The action at bar is not brought prematurely. Truax v. Raich, 239 U.S. 33, 36, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Detroit Creamery Co. v. Kinnane, D. C., 264 F. 845, decree affirmed Kinnane v. Detroit Creamery Co., 255 U.S. 102, 41 S.Ct. 304, 65 L.Ed. 531; Pennsylvania v. West Virginia, 262 U.S. 553, 592, 43 S. Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300; Trade Dollar Consolidated Mining Co. v. Fraser, 9 Cir., 148 F. 585; Louisville & N. R. Co. v. Railroad Commission of Alabama, C.C., 157 F. 944.

### As to the Plaintiff, Davidowitz.

■ ■ As to the plaintiff, Davidowitz, a naturalized citizen of the United States, his right to reside in the State of Pennsylvania and to move freely within that Commonwealth without unlawful interference by its police is protected by law and the Constitution. His rights as a citizen, however, are not justiciable in the suit at bar. The Act is not directed at citizens, either naturalized or native born. If any such were to suffer personal inconvenience, annoyance or embarrassment from enforcement of the Act, they would find existing law quite adequate to redress their grievances. Well advised, indeed, would be the police officer, attempting to enforce the statute, not to lay hands upon or annoy or harass any law-abiding citizen, regardless of his place of birth. In fact, the possible annoyance and embarrassment generally, which Davidowitz fears, would have to be so carefully guarded against by any one attempting to enforce the Act, that it is questionable whether the Act could be enforced at all. In any event, the point is that Davidowitz, like all other citizens, has no present complaint in this case, cognizable in a United States court. While he is a taxpayer of the Commonwealth of Pennsylvania, as averred and admitted, his complaint does not rest on a taxpayer's equity but on a merely anticipated violation of his rights as a citizen. The complaint, therefore, states no present cause of action in Davidowitz.

### The Law.

■ We are of the opinion that the Act is unconstitutional.

### The Act Encroaches Upon a Field Reserved to Federal Action.

The Act fails to state or suggest its purpose. The Commonwealth contends that the statute provides for nothing more serious than a census and that its enforcement will be of service to Pennsylvania in administering certain state laws relating to aliens. For example, statutes of Pennsylvania provide that unnaturalized foreign born residents may not fish within the confines of the Commonwealth, P.L. 448, Section 240, 30 Purdon's Pennsylvania Statutes Annotated, § 240, or hunt therein, P.L. 359, Article IX, Sections 901–905 (34 Purdon's Pennsylvania Statutes Annotated, §§ 901–905), or be employed upon any public work, P.L. 269, Section 1, 43 Purdon's Pennsylvania Statutes Annotated § 151. In our opinion, however, the Act is far more than a census statute. It places conditions upon the right of an alien to reside in Pennsylvania. The alien must register annually and carry his alien registration certificate, simply a card of identity, with him at all times under pain of a drastic penalty. He must produce his registration certificate upon the demand of any police officer, and if he fails to do so may suffer a penalty nearly as drastic. The alien is thus placed under the constant surveillance of the police power of Pennsylvania, not as any other resident might be placed upon the occasion of the commission of a crime or for the good of the Commonwealth, but simply because he is an alien.

■ ■ It must be assumed that Travaglini was lawfully admitted to the United States and that his admission was pursuant to the provisions of Federal law. He was admitted therefore, as was stated by the Chief Justice in Truax v. Raich, supra, 239 U.S. page 39, 36 S.Ct. page 9, 60 L. Ed. 131, L.R.A.1916D, 545, Ann.Cas. 1917B, 283, "* * * with the privilege of entering and abiding in the United States, and hence of entering and abiding in any state in the Union." His right to reside in the United States or in any State depends upon and is settled by Federal law. This principle is decisive in the case at bar. It has been enunciated by the Supreme Court several times. In the case of Fong Yue Ting v. United States, 149 U.S. 698, 714, 13 S.Ct. 1016, 1022, 37 L.Ed. 905, arising under the Chinese Exclusion Act of May 5, 1892, 27 Stat. 25, the Supreme Court stated, "Congress, hav-

ing the right, as it may see fit, to expel aliens of a particular class, or to permit them to remain, has undoubtedly the right to provide a system of registration and identification of the members of that class within the country, and to take all proper means to carry out the system which it provides." In the case of Zakonaite v. Wolf, 226 U.S. 272, 275, 33 S.Ct. 31, 32, 57 L.Ed. 218, arising upon appeal from an order of the Secretary of Commerce and Labor based upon the Act of February 20, 1907, 34 Stat. 898, requiring the deportation of an alien who was practic-. ing prostitution, the Supreme Court said, "It is entirely settled that the authority of· Congress to prohibit aliens from coming within the United States, and to regulate their coming, includes authority to impose conditions upon the performance of which the continued liberty of the alien to reside within the bounds of this country may be made to depend * * *".

In the more recent case of Arrowsmith v. Voorhies, D. C., 55 F.2d 310, 312, a statute of Michigan (Pub.Acts 1931, No. 241) was under consideration. It provided, among other things, that persons of foreign birth illegally entering the United States should be denied admission, or if detected after entry should be deported and that unnaturalized foreign born citizens should obtain certificates of legal residence. The court held this statute unconstitutional and stated that by its terms the State of Michigan was attempting to usurp a power vested by the Constitution exclusively in Congress "over the control of aliens and immigration". The court, citing Henderson v. Mayor of New York, 92 U.S. 259, 23 L.Ed. 543, and Chy Lung v. Freeman, 92 U.S. 275, 23 L.Ed. 550, made plain that the Michigan statute could not be justified upon the theory of the exercise of state police power, and said, 55 F.2d page 312, "* * * the power to regulate the terms and conditions under which aliens may live in any of the several states having been given by the Constitution to the federal government, and that government having exercised it, the right of the federal government is paramount and exclusive, and the act under consideration is an unlawful invasion of it."

The decision of the Supreme Court in the Truax case cited· above casts much light upon the correct determination of the question presented for our consideration. In the Truax case it appears that a statute of Arizona, Act of December 14, 1914 (Laws of Arizona, 1915, Initiative Measures, p. 12) provided that any person or corporation employing more than five individuals at one time, of the number employed, should employ no less than 80% qualified·electors or native born citizens of .the United States. Raich, a native of Austria and an inhabitant of Arizona, but not a qualified elector, brought suit to enjoin the enforcement of this Act upon the ground that it would deprive him of his livelihood. The Supreme Court held the statute unconstitutional upon the ground that its provisions were repugnant to the Fourteenth Amendment. U.S.C.A. Const. Justice Hughes, delivering the opinion of the Court, said, 239 U.S. page 42, 36 S.Ct. page 11, 60 L.Ed. 131, L.R.A. 1916D, 545, Ann.Cas.1917B, 283: "The assertion of an authority to deny to· aliens the opportunity of 'earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work. And, if such a policy were permissible, the practical result would be that those lawfully admitted to the country under the authority of the Acts of Congress, instead of enjoying in a substantial sense and in their full scope the privileges conferred by the admission, would be segregated in such of the states as chose to offer hospitality."

While the Truax case deals specifically with a limitation imposed by a statute upon the right of an alien to earn a living, its principle is applicable under the circumstances of the case at bar for Travaglini cannot live in Pennsylvania except under the burden of compulsory registration, precisely as Raich could not live in Arizona unless he was permitted freely to earn his livelihood. As stated by the Chief Justice, an alien cannot live where he cannot work. It is equally true that an alien cannot work where he cannot live. In the case at bar as in the Truax case the right of the alien to reside within the state is circumscribed by statute.

The power of the Federal Government to require the registration of aliens is clear. Congress has legislated to some extent in this particular field already. See Act of June 29, 1906, c. 3592, § 1, 34 Stat. 596, 8 U.S.C.A. § 106, and Act of February 5, 1917, c. 29, § 12, 39 Stat. 882, 8 U.S.C.A. § 148. Congress has

also legislated in respect to a large part of the field of alien control, specifying terms and conditions upon which aliens may remain in the United States, the method of their entry and the conditions upon which they may be deported. A considerable portion of Title 8 of the Code of the United States (8 U.S.C.A.) is devoted to these subjects. If existing provisions of the Federal laws are insufficient for the control of aliens, further legislation to such ends is within the discretion of Congress.

■ The Act does not pertain to a field in which a state may sustain an interest, Truax v. Raich, supra, 239 U.S. pages 39, 40, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A. 1916D, 545, Ann.Cas.1917B, 283, such as public employment, Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206, Ann. Cas.1917B, 287, ownership in land, Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255, conservation of natural resources, Patsone v. Pennsylvania, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539, and McCready v. Virginia, 94 U.S. 391, 24 L. Ed. 248.

The Act therefore is unconstitutional because it purports to operate in a field in which the individual states of the United States are without authority to legislate. Therefore it may not be justified as an exercise of the police power of the State of Pennsylvania. It attempts to usurp power confided by the Constitution to the Federal government.

*The Act Denies Equal Protection of the Laws to the Alien.*

■ Since the Act impairs the right of the non-exempt alien to reside within the Commonwealth of Pennsylvania, the Commonwealth having legislated in a field reserved to the Federal government, the classification of the Act is as unwarranted as it is unreasonable and the alien is thereby deprived of the equal protection of the laws guaranteed to him by Section 1 of the Fourteenth Amendment, U.S.C.A. Const.

■ While the prohibition of the Amendment against the denial of equal protection of the laws to "any person", whether citizen or alien, does not require a statute to have equality of operation insofar as every individual may be concerned and such a statute may affect the status of each individual differently in his relationship to its subject matter, nonetheless the classification must be based upon reasonable grounds. The statute at bar cannot be so justified, but, on the contrary, as we have indicated, imposes a burden upon aliens simply because they are aliens. It is based upon the single fact of alienage. Even assuming that the Commonwealth of Pennsylvania possessed power to make the classification under consideration, nonetheless that classification is unreasonable for the Commonwealth would permit citizens and such aliens as are within the exemptions of the statute to pass freely from place to place, but all other aliens, though lawfully within the State, must register, pay annual fees, carry identification cards to be produced on demand, and are subject to drastic penalties if they do not do so. The leading case condemning an analogous classification as unreasonable is the Truax case, but see also Ex parte Kotta, 187 Cal. 27, 31, 32, 200 P. 957, a case almost upon all fours with that at bar. In the Kotta case the Supreme Court of California held, relying upon both the Fourteenth Amendment U.S.C.A.Const. and the Civil Rights Act, that the alien poll tax law of California (Statutes of California, 1921, Ch. 424, pp. 613–624), creating an alien poll tax, was invalid. The court said, 187 Cal. page 31, 200 P. page 958: "Stated very generally, the requirement is for equal protection and security for all, citizens and aliens alike, under like circumstances in the enjoyment of their personal and civil rights, and in the imposition of burdens, such as penalties, taxes, * * *".

■ The classification of the statute at bar is not applied even to all aliens, or to such aliens as are ineligible for citizenship or to those who have failed to file a declaration of intention to become citizens. The Act requires registration by an alien who has not filed a declaration of intention to become a citizen or who has filed such a declaration and has failed to become a citizen within three years. That this requirement is arbitrary, unreasonable and capricious, is demonstrated by the provisions of Section 382 of Title 8 of the Code of the United States as amended, 52 Stat. 1247, 8 U.S.C.A. § 382, a section of the Federal Naturalization Act, which provides that in order to admit an alien to citizenship it shall appear to the satisfaction of the court that immediately preceding the date of the alien's application for citizenship he "* * * has resided continuously within the United States for

at least five years * * *". It follows therefore that if it is the intent of the Statute to single out persons who are not in sympathy with our institutions and to create a class of them, it fails palpably.

It is not an unreasonable conclusion that the primary purpose of the Act was to force aliens in the State to become naturalized. As much was argued at bar by counsel for the Commonwealth. While naturalization of aliens residing within our borders is a matter to be encouraged, the desire of the applicant for citizenship should be inspired and engendered by his observation of and experience with the living example of true democracy. It must never be compelled by an act of oppression or tyranny. Otherwise, we might well be deluding ourselves in believing that, when the new citizen abjures allegiance to his late sovereign and swears fealty to our government, his act is one of the heart and not of a designing mind, goaded to a subterfuge. Citizenship, in the best sense of that term, rather than the number of naturalizations, is the thing of real importance. Regulation of naturalization rests with the Federal government.

A further purpose of the Legislature may well have been to cause aliens to leave Pennsylvania and enter states where they are not compelled to register or subjected to a registration fee. If so, the statute looks down that dangerous road by which the states of the United States might well reach the unhappy status of competitive nations. The Act sub judice is not far removed from those statutes which provide for fees, exactions, licenses and even import taxes directed by state against state, their respective goods and inhabitants. For a state to require an alien resident to carry a card of identity could result in any citizen being compelled to prove upon demand that he is not in the class designated. The control of aliens and the conditions of their habitation in the states of the United States must remain in the Federal government.

We wish to make it plain that, in passing upon the questions involved in this case, we have given no effect whatsoever to Travaglini's complaint that, as a non-exempt alien, he would be damaged by being unable to procure an automobile license in Pennsylvania. The provision of the statute in that respect falls necessarily because the Act as a whole falls.

However, what the State might do directly in the matter of prohibiting the issuance of automobile licenses to aliens (See Patsone v. Pennsylvania, supra), it is unnecessary for us either to consider or decide. Accordingly, we express no opinion in such regard and mean to imply none.

We do not deem it necessary to comment upon other contentions expressed at the argument and upon the briefs.

A perpetual injunction will issue against the defendants named, officers of the Commonwealth of Pennsylvania (Ex parte Young, 209 U.S. 123, 155, 161, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Philadelphia Company v. Stimson, 223 U.S. 605, 607, 620, 32 S.Ct. 340, 56 L.Ed. 570, and Truax v. Raich, supra, 239 U.S. page 37, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann. Cas.1917B, 283), enjoining them from enforcing the Act.