### STATE OF CONNECTICUT v. GEORGIANNA THIGPEN

SUPERIOR COURT　　　　NEW HAVEN COUNTY　　　　FILE No. 22717

Memorandum filed June 23, 1978

*Mary M. Galvin,* assistant state's attorney, for the state.

*Stephen F. Frazzini,* for the defendant.

SADEN, J.　The defendant has been indicted for murder. The grand jury was drawn and summoned at random pursuant to General Statutes § 54-45 from an array consisting solely and exclusively of duly registered electors of New Haven county. The defendant now claims that the purposeful and systematic exclusion of aliens from grand jury service makes the statute unconstitutional under article first, §§ 8, 10 and 20 of the state constitution and

under the fourteenth amendment to the federal constitution. The defendant's motion includes a number of other claims of unconstitutionality that are not being pressed.

This issue is one of first impression in Connecticut. It has not been entirely unnoticed in other courts, but in different fact patterns from that existing here. For example, in *Perkins* v. *Smith,* 370 F. Sup. 134 (D. Md.) a resident alien challenged his exclusion from service on grand and petit jury panels in state and federal courts solely because of his alienage. A three-judge district court held that this was permissible and did not deny him equal protection of the law. The United States Supreme Court has ruled that aliens cannot be excluded from welfare benefits (*Graham* v. *Richardson,* 403 U.S. 365); and that citizenship cannot be a prerequisite to a certain class of civil service employment (*Sugarman* v. *Dougall,* 413 U.S. 634) or for admission to the bar of the state of Connecticut. (*In re Griffiths,* 413 U.S. 717.)

Starting with *Truax* v. *Raich,* 239 U.S. 33, there have been numerous decisions extending court protection to aliens against laws that have interfered with their economic rights, e.g., the right to earn a livelihood or to exist through welfare support. No court, however, has seen fit to protect participation of aliens in democratic political institutions, particularly those involving a state's constitutional prerogatives. A dictum in *Carter* v. *Jury Commission,* 396 U.S. 320, 332, declared that "[t]he States remain free to confine the selection [of jurors] to citizens . . . ."

There are a variety of reasons to support alien disqualification from jury service. Aliens are likely to be less qualified than citizens from the standpoint of familiarity with local laws, custom, and language

so as to understand fully the motives and actions of litigants. Jury service is a unique responsibility going to the heart of representative government not generally accepted in most countries of the world. As such, it should be entrusted to citizens only.

Both state and federal governments have a compelling interest in confining jury service to citizens who owe allegiance only to the United States of America and not to any foreign land. Aliens may be barred from exercising many political rights, such as holding public office, because citizenship bears some rational relationship to the special demands of a particular position. Jury service stands in this category.

Finally, by strong dictum again in *Foley* v. *Connelie,* 435 U.S. 291, 299, the United States Supreme Court stated: "In short, it would be as anomalous to conclude that citizens may be subjected to the broad discretionary powers of noncitizen police officers as it would be to say that judicial officers and jurors with power to judge citizens can be aliens." In *Foley,* the court upheld a New York statute limiting appointment of members of the state police force to citizens.

For these reasons, the defendant's motion to quash on the ground indicated fails to establish any violation of her rights under the state or federal constitutions because she has no right to have aliens included in grand jury panels. The motion to quash is denied.