N. W. HALSEY & CO. et al. v. MERRICK, Bank Com'r, et al.

WEIS FIBER CONTAINER CORP. v. SAME.

(District Court, E. D. Michigan. December 30, 1915.)

Nos. 131, 132.

1. COURTS ⬅489—FEDERAL COURTS—JURISDICTION.

A federal court has jurisdiction of a suit to enjoin the enforcement of a state statute which is in violation of the federal Constitution.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. ⬅489.]

2. COMMERCE ⬅60—INTERSTATE COMMERCE—INTERFERENCE BY STATE.

The Michigan "Blue Sky Law" of 1915 (P. A. Mich. 1915, No. 46), which prohibits the sale in the state of the stock or securities of any investment company until it shall have obtained the approval of the State Securities Commission, which is authorized to make any examination it may see fit of the business and property of the company at the company's expense, and to withhold its approval if it finds that the proposed plan of business of the company, or its proposed contracts, stock, bonds, or other securities, are fraudulent, or are of such a nature that their sale "would in the opinion of said commission work a fraud upon the purchaser," held void, as imposing a direct burden upon interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 91–95; Dec. Dig. ⬅60.]

In Equity. Suits by N. W. Halsey & Co. and others and by the Weis Fiber Container Corporation against Frank W. Merrick, Bank Commissioner, John W. Haarer, Treasurer, and Grant Fellows, At-

torney General, composing the Michigan Securities Commission. On motions for preliminary injunction to enjoin enforcement of Michigan Blue Sky Law of 1915. Motion granted.

Beaumont, Smith & Harris, of Detroit, Mich., and Robert R. Reed, of New York City, for plaintiffs.

Grant Fellows, Atty. Gen., of Lansing, Mich., for defendants.

Before DENISON, Circuit Judge, and SESSIONS and TUTTLE, District Judges, pursuant to section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1913, § 1243]).

PER CURIAM. Two years ago, the same three judges now sitting considered the Michigan "Blue Sky Law" of 1913, and for the reasons stated in Alabama Co. v. Doyle (D. C.) 210 Fed. 173, held it invalid. No appeal was taken, but the Legislature of 1915 passed the substitute law which is now before us (Act No. 46, P. A. 1915). By the two pending bills and the various interventions, injunctions against the law's enforcement are sought by an issuing corporation and by corporate, partnership, and individual dealers, all citizens of other states, and thus the law's validity is challenged by every kind of nonresident interest.

[1] We do not doubt the jurisdiction of the court. See Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Traux v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. ——; Phœnix Co. v. Geary, 239 U. S. 277, 36 Sup. Ct. 45, 60 L. Ed. ——; Michigan v. Baird, 173 Mich. 655, 139 N. W. 1030; Nolen v. Riechman (D. C. Tenn.) 225 Fed. 813.

[2] It is not important to go over the same ground as before. Our conclusions then announced have been more or less completely approved—in the Eighth Circuit, by Judges Smith, McPherson, and Pollock (Compton v. Allen [D. C.] 216 Fed. 537); in the Fourth, by Judges Pritchard and Dayton, Judge Woods dissenting, but not on these points (Bracey v. Darst [D. C.] 218 Fed. 482); and in the Eighth again, by Judges Sanborn, T. C. Munger, and Elliott (Sioux Falls Co. v. Caldwell, Attorney General of South Dakota, Nov. 18, 1915, without written opinion).

The only question now open is whether the differences between the laws of 1913 and 1915 justify any different result as to the latter. We think not, because we find no substantial changes in those respects which were held to be fatal. Some minor details have been corrected, but the new law, like the old, impresses upon interstate commerce a burden which is direct and which is beyond the limits of the police power.

The 1913 law suspended all deals for 30 days, and then, lacking actual objection, automatically withdrew legal objection. The new law forbids all dealings until after affirmative approval by the Commission. This approval would not, normally, be obtainable for several days, and it may be indefinitely withheld, without objection made or reason given, but at the mere convenience of the Commission. The change in the law has not diminished this burden, in directness or in weight.

Under the 1913 act sales were to be forbidden, if the Commission finds that the plan of business is unfair, or that the securities (a) are fraudulent, (b) will, in all probability, work a fraud upon the purchaser, or (c) will, in all probability, result in loss to the purchaser. The 1915 act in terms seems to eliminate the tests of unfairness and of probable loss, but in fact provides for disapproval, if the Commission finds:

"That the proposed plan of business of said investment company, or that its proposed contracts, stocks, bonds or other securities are fraudulent, or are of such a nature that the sale of such contracts, stocks, bonds or other securities would, in the opinion of said Commission, work a fraud upon the purchaser." Section 9.

Has there been any substantial change, or has the omission of the words "unfair" and "loss" left the statute unchanged in true intent and meaning? Obviously, the statute is not content to rest the Commission's condemnation alone on the fraudulent character of plan or securities. They must also meet the additional test whether, "in the opinion of the Commission," the sale of the securities would "work a fraud upon the purchaser." To "work a fraud upon the purchaser" must be something different from being "fraudulent"; and the clause would seem to be difficult of interpretation, save for the aid given by the history of the statute and by an additional section which first appears in the new law. This is section 8, copied in the margin.[1] It provides in substance that the Commission may, by its own experts and physical examination, determine the value of the property involved, and may prohibit the sale, unless all securities in excess of the value so determined are surrendered to the Commission—all of which plainly

---

[1] Sec. 8. The said Commission shall have power to demand from any investment company seeking to come under the provisions of this act any further information other than such investment company is required to furnish under the provisions of this act which shall be necessary to the end that the Commission may be put in possession of all facts and information necessary to qualify it to properly pass upon all questions that may come before it. It may make or have made under its direction a detailed examination of such investment company's property, business and affairs, which examination shall be at the expense of such investment company. It may cause an appraisal to be made, at the expense of said investment company, of the property of said investment company, including the value of patents, good will, promotion and tangible assets, and it may fix the amount of stocks, bonds and securities that shall be issued by any corporation, foreign or domestic, in payment for property, patents, good will, promotion and intangible assets at the value it shall find the same to be worth and may require that such stocks, and securities so issued for such property, patents, good will, promotion and intangible assets shall be deposited in escrow under such terms as said Commission may prescribe. And said Commission may withhold its license to sell such stocks, bonds and securities if such corporation has issued stocks, bonds and securities in payment for property, patents, good will, promotion and intangible assets in excess of their value as found by said commission or if said stocks, bonds and securities are not deposited in escrow according to the terms fixed by such Commission until such stocks, bonds and securities issued in payment for property, patents, good will, promotion and intangible assets in excess of the value so found by said Commission have been surrendered to such corporation and canceled by it, and until said stock has been deposited in escrow under the terms prescribed by said Commission.

means that the Commission is, directly or indirectly, to fix the price at which securities may be sold. When this provision is read in connection with the general rule of prohibition in section 9, it is clear enough that "in the opinion of said Commission work a fraud upon the purchaser" means "in the opinion of said Commission will in all probability result in loss to the purchaser," and no real change in the meaning has been accomplished.

The burden of examination imposed by section 8 need only be noticed to be appreciated. There is no limit to either the time which may be consumed or the amount of expense which may be imposed; and from the whole statute the conclusion that interstate dealings in legitimate securities is forbidden, save at the practically unregulated discretion of an administrative board, seems to us entirely clear. The fees to be paid, the delays imposed, and the large, often very large, expense involved in furnishing information and conducting examinations, amount to a practical prohibition of all small dealings, and they emphasize the directness and extent of the restrictions placed on all interstate commerce in these securities.

Several serious objections to the validity of the law are urged in addition to those passed upon in our former opinion; but it is unnecessary to consider them. The preliminary injunctions prayed for should issue; but each complainant or intervener, before an injunction may be issued for his benefit, must give a bond to the state, conditioned that, in case the law should ultimately be held valid, he will pay all fees and charges required by the act. The penalty and the detailed form of all such bonds shall be as from time to time determined by the judge of this district.