**STARRING et al. v. FRAZIER, U. S. Atty., et al.**

**No. 145.**

District Court, D. Tennessee, at Chattanooga. Oct. 23, 1933.

Carlisle S. Littleton, of Chattanooga, Tenn., for complainants.

Wm. J. Carter, former U. S. Atty., John H. Doughty, Asst. U. S. Atty., both of Knoxville, Tenn., and James B. Frazier, Jr., present U. S. Atty., of Chattanooga, Tenn., for defendants.

TAYLOR, District Judge.

This suit attacks the validity of the National Industrial Recovery Act, 48 Stat. 195

(to be hereinafter called act), and the Code of Fair Competition for the Underwear and Allied Products Manufacturing Industry, as approved on September 18th and made effective October 2, 1933 (to be hereinafter called code).

The original bill was amended and supplemented October 9th by consent of the parties, and notice and motion for temporary restraining order and interlocutory injunction pendente lite waived, and the matter set for hearing October 21st.

At this hearing, the defendant J. B. Frazier, Jr., moved to dismiss the bill as amended and supplemented, upon the ground that no facts are alleged therein showing legal injury to the complainant, threatened or otherwise, entitling him to maintain the suit.

After argument in behalf of the defendant J. B. Frazier, Jr., in support of the motion to dismiss and in behalf of the complainant in opposition thereto, the court desiring to give the question presented further consideration before decision, counsel for the last-mentioned parties agreed to also argue the questions raised by the motion for temporary restraining order and interlocutory injunction pendente lite, which was done. The defendant Southern Silk Mills was represented at the hearing by counsel, who did not participate in the argument of either motion. That defendant filed no pleading.

The sole question before me on the motion to dismiss is whether the bill of complaint states legal injuries to the complainant, threatened or otherwise, which entitle him to maintain the suit. For the purpose of this motion, the invalidity of the statute and code adopted pursuant thereto must be assumed. It is unquestionably true, and was conceded in argument, that any manufacturer in the industry directly and adversely affected by the code might in a proper proceeding test the validity of the act. The question whether the complainant may maintain the suit depends upon whether the act and the code undertake to operate directly upon his employment and his freedom to contract with respect thereto.

What the act authorizes and what the code provides, as set forth in the bill, and attacked as invalid because unconstitutional, is part III of the code, which provides:

"1. No sewing machine shall be operated for more than one (1) shift of forty (40) hours per week.

"2. No knitting machine shall be operated for more than two (2) shifts of forty (40) hours per week."

The complainant, a dyer formerly in the employ of the defendant silk mills, aptly pleads that these provisions resulted in his loss of employment; that but for them he would be re-employed at a wage satisfactory to himself and his former employer; that the defendant silk mills, before the code became effective, operated its machines for a much longer period of time than permitted under the code, and would continue to do so but for the provisions of the code; that the shortening of hours of use of the machines required by the code resulted necessarily in complainant's loss of position, since the defendant silk mills was financially unable to purchase other machines, and that in any event a compliance with this provision of the code would be economically unsound by reason of facts pleaded; that no other causes contributed to his loss of position, and that he remains unemployed "solely because of the application of part III of the Code to defendant Southern Silk Mills, and of fear on the part of said employer of prosecution under said part III of the Code, and of the Act." The bill further alleges, "that except for the coercion incident to prosecution under said void and invalid Code and Act, Southern Silk Mills would, and if such coercion is removed, will resume operations on its machines as before October 2, 1933, and employ complainant as a dyer," at his former wages, or at wages provided by said code, "all of which complainant and defendant Southern Silk Mills desires to do, but of which right to contract complainant is denied by reason of the coercion" of threatened prosecution under the act and code.

The relief prayed in the bills is a temporary restraining order and an interlocutory injunction pendente lite enjoining the defendant United States attorney from enforcing part III of the code by prosecution or otherwise, as against the defendant Southern Silk Mills, and for an injunction against the defendant Southern Silk Mills from complying with part III of the code solely because of fear of criminal prosecution thereunder, and for the removal of all coercion. There are also allegations in the bill pointing out specifically the injury that will follow operation of the provisions of the code to others in whose behalf the complainant sues. Those allegations are certainly immaterial to a determination of the question raised by the motion to dismiss. The right to raise a constitutional question is not dependent upon volume. It must be personal and direct.

Nothing in the act or in the code provision complained of expressly operates upon the right of the employer defendant, Southern Silk Mills, to employ complainant or any other necessary or even unnecessary labor. In Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 8, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, Raich, an alien, was about to be discharged by his employer because the employer had in his employ less than 80 per cent. qualified electors or native-born citizens of the United States or some subdivision thereof. An unconstitutional act of the state of Arizona undertaking to protect citizens of the United States in their employment against noncitizens of the United States, in Arizona, penalized the employment of less than 80 per cent. of such citizens. After the adoption of the act, "Raich was informed by his employer that when the law was proclaimed, and solely by reason of its requirements and because of the fear of the penalties that would be incurred in case of its violation, he would be discharged." Raich's bill was grounded upon this situation, and its allegations were not controverted. Among other defenses interposed, it was asserted that the "plaintiff was not entitled to sue for the relief asked." It was urged that the employer only, he being the one threatened with prosecution, might maintain the suit. This contention was overruled by the court in this language: "The discrimination against aliens in the wide range of employments to which the act relates is made an end in itself, and thus the authority to deny to aliens, upon the mere fact of their alienage, the right to obtain support in the ordinary fields of labor, is necessarily involved." Truax v. Raich, supra, pages 41, 42 of 239 U. S., 36 S. Ct. 7, 10.

In Herbring v. Lee, Insurance Commissioner of Oregon, 280 U. S. 111, 50 S. Ct. 49, 51, 74 L. Ed. 217, 64 A. L. R. 1430, an act of Oregon was assailed as unconstitutional upon the ground that it forbade foreign insurance companies to do business other than through licensed local agents and restricting the number of such agents to two in each city of the state having more than a certain population, unless and until such company should apply to the insurance commissioner therefor and pay a license fee of $500 for such additional agent. Herbring was offered employment as an agent to represent the insurance company in the city of Portland. Under the statute, Lee, the insurance commissioner, declined to issue the license because the nonresident company declined to pay the additional $500 license fee. Herbring brought suit

against Lee attacking the constitutionality of the act and seeking to require the issuance of his license without compliance with the statute. In this case the exact question presented in the case at bar was not before the court, but the court in passing over that insistence used this language:

"The appellant also urges in argument, that 'if the statute be regarded as a corporate regulation, rather than as an individual prohibition, it is unconstitutional, in that it is unreasonable, arbitrary and capricious' and cannot be sustained under the police power of the State. In other words, he seeks in argument to challenge the validity of the statute on the ground that it is an infringement of the Company's constitutional right to appoint an additional agent. The Company itself is not here insisting that the statute constitutes an impairment of its own right; it raised no such question before the Commissioner, and for aught that appears acquiesced in that officer's view of the validity of the statute.

"It may well be that under the facts in this case Herbring's individual interest in this question is not direct but merely collateral and remote and not such as would have entitled him to challenge the constitutional validity of the statute on the ground that it is an impairment of the Company's own rights."

In that case, as in the case at bar, the statute complained of was the sole reason why complainant could not be employed. While the language quoted is obiter dictum, it is an expresion upon facts more nearly like the facts of the case at bar than any revealed in the cases decided by the Supreme Court which have been cited or which I have been able to examine.

I think the true test is whether the invalid statute, or, as in this case, the invalid statute and code adopted thereunder, were intended to, and necessarily operate to, infringe the rights of complainant. In the Truax Case, as it will be noted from the quotation therefrom hereinabove, the court sustained Raich's right to maintain the action upon the ground that the right was "necessarily involved"; that the discrimination complained of was "made an end in itself."·

In the instant case I think the right is legally remote and indirect, and not necessarily involved by the assailed act or the code. I do not think it was intended by the Congress, in authorizing the limitation of the hours of use of machines, to deprive dyers of their employment or right to contract with respect thereto any more than to interfere with the manufacturers of dyes to be used in the process or furnishers of materials to be operated upon by the machines, or the manufacturers of boxes within which to pack for shipment the manufactured products, or any other person remotely affected by incidental curtailment of production. Neither the act nor the code expressly or necessarily required the defendant silk mills to discharge complainant. The relationship of employer and employee was not the subject-matter or "made an end in itself," nor does either necessarily prevent his being re-employed. No such result being intended or legally necessarily involved, I am of opinion complainant is not entitled to maintain his action.

An order dismissing the suit may be lodged with the clerk or agreed to for approval and entry.