

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 31, 1971

Mr. James H. Havey, Director
Texas Industrial Commission
814 Sam Houston Building
Austin, Texas

Dear Mr. Havey:

Opinion No. M-946

Re: Whether the Texas Industrial
Commission may employ on a
full-time basis persons who
are and intend to remain
citizens of the Country of
Mexico for its Mexico City
Office.

In your letter requesting an opinion from this office,
you submit the following facts:

"As you are aware the Texas Industrial
Commission has plans for the opening of an
extension office in Mexico City. Your re-
cent opinion M-909, dated 20 July, 1971 rec-
ognized legislative intention and authorized
the payment of employee or employees salaries
who were working and residing in Mexico.

". . . for the office to obtain its
peak effectiveness and to obtain the maxi-
mum from the office it will be necessary
to hire a Mexican-National, on a permanent
basis for continuity purposes, who is com-
pletely bi-lingual both in reading and writ-
ing."

With regard to these facts you question whether the
Texas Industrial Commission may employ on a full-time basis
persons who are and intend to remain citizens of the coun-
try of Mexico for its Mexico City office.

Section 2, Article III of Senate Bill No. 11, Regular
Session, as amended by Senate Bill No. 7, First Called Ses-
sion, Acts 62nd Legislature, 1971 (General Appropriation
Act) provides as follows:

-4630-

"EXECUTIVE AND ADMINISTRATIVE DEPART-
MENT AND AGENCIES SPECIAL PROVISIONS

"Sec. 2.    EMPLOYMENT OF ALIENS.   No money
shall be paid out of any appropriation made in
this Article for personal services for a longer
period than ninety (90) days to any person who
is not a citizen of the United States unless
the person has begun naturalization proceedings."

In Attorney General's Opinion M-909 (1971) this office
held that:

"Subsections (a), (b), and (e) of Section
4, Article 6144(e), Vernon's Civil Statutes,
grants to the Industrial Commission authority
to open an extension office in Mexico City,
Mexico, D.F. and to pay the salaries of em-
ployees who are working and residing in Mexico."

We believe that when the language of the above quoted
Section of the appropriation bill is read in pari materia
with the caption, which in this instance is also a part of
the legislative enactment, it is evident that the Section
was intended to apply to the employment of aliens and that
the only aliens not intended to be reached by the enactment
are aliens who have begun naturalization proceedings.  We
do not believe the Section as read in pari materia with its
caption was directed to the employment of persons neither
aliens nor citizens of the United States.  Employment of
a Mexican national in Mexico is not employment of an alien.
When the State of Texas undertakes a proprietary function
in a foreign jurisdiction, it places itself in the position
of any other alien employer doing business in the foreign
country, and because the term alien is by definition rela-
tive to the location of use of the term, it seems clear
that under the circumstances posed in your opinion request,
the State of Texas and not the Mexican National is the
alien involved.  The employer is the foreigner, not the
employee.  The exception in favor of persons who have be-
gun naturalization proceedings is indicative that aliens
in the United States are the persons to whom the ban is
directed.  Whether the Legislature could enact a valid stat-
ute providing that the State was prohibited from employing
foreign nationals in foreign countries is a question not
reached in this opinion.  Serious questions concerning

foreign relations, a field in which the Federal government has exclusive jurisdiction, could be raised by such an enactment.  cf. Poon v. Miller, 234 S.W. 573 (Tex.Civ.App. 1921, no writ); Purdy & Fitzpatrick v. State, 71 Cal.2d 566, 456 P.2d 645 (Cal.Supp. 1969).

Even more compelling, Section 2 of Article III of Senate Bill No. 11, an unreasonable and invidious discrimination on the basis of alienage, violates the Fourteenth Amendment of the Federal Constitution.  See please, Antieau Modern Constitutional Law, Volume 1, Section 8:66.

It seems very clear that an alien, within the jurisdiction of the Courts of the United States and the State of Texas, can successfully urge that the alienage discrimination contained in the appropriations bill is patently unconstitutional, relying on such holdings as, Graham v. Richardson, _____ U.S. _____, 29 L.Ed.2d 534, _____ S.Ct. _____ (1971), holding discrimination in welfare payments may not be based on alienage; Takahashi v. Fish and Game Commission, 334 U.S. 410 (1948), holding that a commercial fishing license may not be withheld because of alienage; and, Truax v. Raich, 239 U.S. 33 (1915), holding that a State may not validly enact a law which requires that aliens be discriminated against by employers within the state. While there is some aged authority that a state may discriminate on the basis of alienage in employing people on public works projects and in areas where there might exist reasonable grounds for the discrimination, the cited cases make it clear that any such discrimination is highly suspect and must be shown to be limited in effect to overriding considerations of equal dignity with the right being denied. The lack of any such limitation in the provision of the appropriations bill above quoted is constitutionally fatal. Indeed, under Graham v. Richardson, supra, there are grave questions concerning the "contemporary vitality of the special public interest doctrine."  Nor have contemporary state courts hesitated to strike down alienage restrictions even on state public works projects.  See please, Purdy & Fitzpatrick v. State, supra, holding that a state law with a blanket prohibition against aliens in state employment interferes with the comprehensive federal legislative scheme enacted for aliens, in addition to amounting to a violation of the Fourteenth Amendment to the Federal Constitution.

We do not believe there is any valid reason shown by the alienage restriction quoted above to support any argument that even though invalid as to aliens within the United States, the restriction is nevertheless valid as applied to foreign nationals in their own country, and we therefore render our opinion that the quoted provision is, on its face, unconstitutional in toto. We express no opinion at this time on whether a bill could be drawn imposing discriminations outside the jurisdiction of the United States which cannot be imposed within the United States. In our opinion, serious questions exist concerning whether a state could do such a thing.

### S U M M A R Y

For the reasons stated above, you are advised that Section 2, Article III of the General Appropriations Act, does not prohibit the Texas Industrial Commission from hiring a Mexican National to work in Mexico on a full-time basis. Such Section violates the Fourteenth Amendment of the Federal Constitution and is unconstitutional.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Samuel D. McDaniel
Assistant Attorney General

APPROVED: OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Ivan Williams
William Craig
Harold Kennedy
Bob Lattimore

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant