LICENSE TO PRACTICE MEDICINE — CITIZENSHIP Title 59 O.S. 489.1 [59-489.1], 59 O.S. 493 [59-493] [59-493] and 59 O.S. 498 [59-498] (1971) are unconstitutional insofar as they purport to wholly exclude aliens from the practice of medicine in the State of Oklahoma without regard to other factors. However, this opinion in no way relieves the Board of the continuing responsibility to determine appropriate training, character and suitability for practice for the protection of the public. The Attorney General has received your request for an opinion wherein you, in effect, ask the following question: Are the provisions of the Medical Practice Act of Oklahoma contained in 59 O.S. 489.1 [59-489.1], 59 O.S. 493 [59-493], and 59 O.S. 498 [59-498] (1971) requiring citizenship and/or declaration of intention to become a citizen as a prerequisite to licensure in Oklahoma, constitutional? Title 59 O.S. 489.1 [59-489.1] (1971) dealing with the registration of foreign trained doctors reads in pertinent part as follows: "No person shall be eligible for a certificate for Limited Institutional Practice unless he: . . . (3) is a citizen of the United States, or has filed intention to become a citizen of the United States; and (4) . . ." Title 59 O.S. 493 [59-493] (1971) deals with eligibility for examination for licensure, as a physician, of non-citizens of the United States and reads in pertinent part as follows: "(b) Where an applicant is not a citizen of the United States, has filed his intent to become a United States citizen, . . . the board may make such further inquiry, including a personal interview, as satisfies the board that he has such equivalent premedical and medical training. "Notwithstanding the provision of subsection (d), Section 498 of this title, an applicant for licensure who is not a citizen of the United States, but has filed his intent to become a citizen of the United States and who otherwise fulfills the requirement for licensure to practice medicine and surgery in this state, may be licensed by the board under such terms and conditions as the board may deem appropriate." Title 59 O.S. 498 [59-498] (1971), referring to the acceptance and registration of applicants holding licenses from other states, the District of Columbia or the National Board of Medical Examiners, states in Section (d): " . . . no such applicant shall be licensed in this state who is not a citizen of the United States." It is apparent from these sections that there is a complete denial of the right to practice medicine in Oklahoma to any physician or surgeon who is not a citizen and has not declared an intention to become one. This total preclusion of all such physicians raises the issue as to whether or not these statutes are of such a discriminatory nature as to be deemed violative of the Equal Protection Clause of the Fourteenth Amendment to the United Constitution. In the recent case of Sugarman v. Dougall, U.S. --, 37 L.Ed.2d 853, 93 S.Ct. (1973), the Supreme Court held that an alien is entitled to the shelter of the equal protection laws, and that the protection extends to aliens who work for a living in the common occupations of the community. In this regard, see also Traux v. Raich, 239 U.S. 33, at 41, 60 L.Ed.2d 131,36 S.Ct. 7 (1915). The Court further held that, in reviewing the validity under the equal protection clause of statutes which treat aliens differently from citizens, it would look to the substantiality of the State's interest in enforcing the statute in question, and to the narrowness of the limits under which the discrimination is confined. Sugarman clearly stands for the basic proposition that classifications based on alienage are subject to close judicial scrutiny. In this regard see also Graham v. Richardson, 403 U.S. 365, at 372,29 L.Ed.2d 534, 91 S.Ct. 1848 (1971). As alienage is an inherently suspect classification subject to close judicial scrutiny, it becomes incumbent upon this office to examine the statutes in question to ascertain whether or not they are capable of surviving such scrutiny. The case of In Re Griffiths, U.S. ___ 37 L.Ed.2d 910, 93 S.Ct. ___ (1973), is of immense assistance in this endeavor. In Griffiths the Court was concerned with a case where a Dutch citizen residing in Connecticut was denied an opportunity to take the Connecticut bar examination because she was not a citizen of the United States as was required by a state court rule, which rule had been upheld by the state courts. In this case the Court stated that a state which adopts a suspect classification, such as one based on alienage, bears a heavy burden of justification, a burden which requires a state to meet certain standards of proof. The Court, in discussing these standards, stated that: "In order to justify the use of a suspect classification, a state must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is 'necessary to the accomplishment of its purpose or the safeguarding of its interests."' In Griffiths, supra, the Court found that Connecticut had not carried out its heavy burden, and held that the rule precluding non-citizens from taking the Connecticut bar examination was violative of the Equal Protection Clause of the United States Constitution. It becomes apparent that the Oklahoma statutes with which we are herein concerned would likewise fail the test of constitutionality set forth in Griffiths, supra. There are, however, other constitutional factors which the Court set forth as appropriate for consideration prior to the admission of attorneys to the bar association which would be equally applicable to physicians. Oklahoma has a constitutionally permissible and substantial interest in determining whether an applicant possesses the character and general fitness required for a doctor, no less than Connecticut has that right for attorneys. There is likewise wide freedom on the part of the State to gauge on a case by case basis the fitness of an applicant to practice medicine. Such requirements as appropriate training, character investigation, continuing scrutiny by the Board, etc., would be considered reasonable measures to protect the public. The adoption of these measures should enable the State to avoid any adverse effects from the removal of the prohibition on aliens. It is, therefore, the opinion of the Attorney General that your question be answered in the negative. Title 59 O.S. 489.1 [59-489.1] 59 O.S. 493 [59-493], and 59 O.S. 498 [59-498] (1971) are unconstitutional insofar as they purport to wholly exclude aliens from the practice of medicine in the State of Oklahoma without regard to other factors. However, this opinion in no way relieves the Board of the continuing responsibility to determine appropriate training, character and suitability for practice for the protection of the public. (James R. Barnett) ** SEE: OPINION NO. 75-126 (1975) ** ** SEE: OPINION NO. 88-058 (1988) **