Robert E. White, J.
This action is for a declaratory judg *428 ment challenging the constitutionality of section 222 of the Labor Law of the State of New York.
David Salla (Salla) and Robert Keppley (Keppley) were employed by Lisbon Contractors, Inc. (Lisbon), in the construction of a sanitary sewer interceptor in the County of Monroe. The primary source of Lisbon’s business is derived from establishing sanitary systems for municipalities as part of projects that are financed as public works. Salla and Keppley were terminated by Lisbon as required by the County of Monroe by reason of Lisbon’s noncompliance with section 222 of the New York State Labor Law.
The section provides that in public works construction, "preference in employment shall be given to citizens of the state of New York who have been residents of the state for at least twelve consecutive months immediately prior to the commencement of their new employment.” The effect of this classification of potential workers on the basis of where they live, and how long they have resided there, is to deny the plaintiffs the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.
In moving from State to State for the lawful purpose of obtaining employment, plaintiffs Salla and Keppley were exercising their fundamental constitutional rights to travel and to work, and their right to travel from one State to another "occupies a position fundamental to the concept of our Federal Union.” (United States v Guest, 383 US 745, 757.) Further, "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional.” (Shapiro v Thompson, 394 US 618, 634.)
Section 222 denies the plaintiffs the opportunity of obtaining and engaging in lawful employment solely because they had not resided in New York for an arbitrarily prescribed period. It not only abridges their fundamental right to travel, but also their right to engage in business, which right was the very purpose of the Fourteenth Amendment. (Truax v Raich, 239 US 33.) And, this personal right to engage in business encompasses the right to engage in business in another State. (Colgate v Harvey, 296 US 404.)
The burden of proof to demonstrate that the restrictions imposed by section 222 are necessary to promote a compelling governmental interest rests on the defendants herein, and it is not sufficient for the State to show that durational residence *429 requirements further a very substantial State interest. (Dunn v Blumstein, 405 US 330.)
It is readily conceded that New York State has an interest in reducing unemployment — however, protecting employment opportunities of State residents against out-of-State residents is a constitutionally impermissible objective for State legislation, violating both the commerce clause of the United States Constitution (Polar Co. v Andrews, 375 US 361; Baldwin v G.A.F. Seelig, Inc., 294 US 511), and the equal protection guarantees of the Fourteenth Amendment.
The constitutionality of section 222 was before a three-Judge Federal Court in C.D.R. Enterprises v Board of Educ. (412 F Supp 1164).
That case involved contractors and the termination of their employees on public works projects because the employees were resident aliens rather than citizens. The contractors and their employees successfully challenged the constitutionality of section 222 on the ground that by preferring citizens over aliens the statute violated the equal protection clause of the United States Constitution. The three-Judge court held that section 222 was unconstitutional insofar as it grants "a preference in employment to citizens over aliens”. (Id., at p 1172.) This decision was affirmed, without opinion, by the United States Supreme Court (sub nom. Lefkowitz v C.D.R. Enterprises, 429 US 1031).
It cannot be denied that citizens of the United States have at least the same rights and privileges as resident aliens. (See, e.g., Graham v Richardson, 403 US 365, 378; Takahashi v Fish Comm., 334 US 410, 420; Traux v Raich, 239 US 33, 42, supra.) State citizenship is defined by the Fourteenth Amendment to the United States Constitution as "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.” (US Const, 14th Amdt, § 1.) Thus, for persons who are United States citizens, residency in a State is equivalent to citizenship in that State: in this context, citizenship means residency.
It is true that section 222 does not "prohibit” non-New Yorkers from obtaining public employment, but rather "prefers” potential workers who have lived in New York for 12 months. However, the "preference” imposed by section 222 means that non-New Yorkers are at a disadvantage in obtaining employment on public works projects in New York. This, *430 however, in and of itself violates the privileges and immunities guarantees of the Constitution. In Toomer v Witsell (334 US 385, 396) the court said that "it was long ago decided that one of the privileges which the [privileges and immunities] clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State.”
The fact that the "preference” applies only to public employment is immaterial to the question of the constitutionality of section 222. The constitutional challenge to this statute cannot be answered by the argument that public employment is a "privilege” and not a "right”. (See Goldberg v Kelly, 397 US 254, 262; Shapiro v Thompson, 394 US 618, 627, n 6, supra.) New York may not deny a benefit to a person on a basis that infringes his constitutionally protected interests. (See Sherbert v Verner, 374 US 398.) "[W]e may no longer question that state regulation of public employment must accord with the Fourteenth Amendment.” (Purdy & Fitzpatrick v State of California, 71 Cal 2d 566, 584.)
In Colgate v Harvey (296 US 404, 428, supra), the court cited the following language with approval:
" 'The "privileges and immunities” secured by the original constitution were only such as each state gave to its own citizens. Each was prohibited from discriminating in favor of its own citizens and against the citizens of other states.
" 'But the fourteenth amendment prohibits any state from abridging the privileges or immunities of citizens of the United States, whether its own citizens or any others. It not merely requires equality of privileges but it demands that the privileges and immunities of all citizens shall be absolutely unabridged, unimpaired.’ ” (Citing to the Slaughter House Case, 1 Woods 21, 28.)
The court in Colgate v Harvey went on to say that (p 429) "[u]nder the Fourteenth Amendment, therefore, the simple inquiry is whether the privilege claimed is one which arises in virtue of national citizenship. If the privilege be of that character, no state can abridge it.” The court held that the right to travel is such a privilege, and concluded by holding that (pp 430-431) "[t]he right of a citizen of the United States to engage in business * * * in any state other than that in which the citizen resides is a privilege equally attributable to his national citizenship. A state law prohibiting the exercise of *431 * * * these rights in another state would, therefore, be invalid under the Fourteenth Amendment.”
Section 222 attempts to resolve some of the economic problems confronting New York State in the construction industry by reducing competition of persons from out-of-State. This type of legislation is unconstitutional, and this has been affirmed by the Supreme Court in the recent case of Boston Stock Exch. v State Tax Comm. (429 US 318).
The Boston Stock Exch. case discussed the legislative and executive history of section 270-a of the Tax Law which provided certain tax advantages to the sale of stock in New York, as opposed to the sale of stock out-of-State. It was determined that the obvious intent of the legislation was to relieve the New York Stock Exchange from competitive pressures outside the State. Both the Legislature and the Governor notes that the stock exchanges located within the State had contributed to the economy of New York and were important to the future economic prosperity of New York.
The court held this legislation attempting to protect its security industry to be unconstitutional under the commerce clause.
In the instant case, by awarding public work contracts, the State’s primary interest is to ensure that the work is performed efficiently, competently and at the lowest cost to the public treasury. Section 222 does not direct itself to these goals, but rather, only with the State residency status of those who will do the work. Such a basis of preference is purely arbitrary, and constitutionally impermissible.