**Jairo MARIN et al.**

v.

**James E. SMITH, District Director, United States Immigration & Naturalization Service.**

Civ. No. H-74-59.

United States District Court, D. Connecticut.

March 27, 1974.

Stephen B. Horton, Hartford, Conn., Ryszard S. Mrotek, New Britain, Conn., for plaintiffs.

Henry S. Cohn, Asst. U. S. Atty., Hartford, Conn., for defendant.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

Plaintiffs seek to represent a class of aliens awaiting processing of petitions for non-quota immigrant visas which would change their status from aliens temporarily admitted to the United States to permanent resident aliens. Plaintiffs seek a decree requiring the Immigration and Naturalization Service (INS) to decide within a reasonable period of time whether or not to endorse their "I-94" forms to read "EMPLOYMENT AUTHORIZED—ADJUSTMENT APPLICANT." Although not provided for by statute or regulation, this endorsement is described in INS "Operations Instructions" as something which "may be" placed upon the I-94 forms of members of plaintiffs' purported class.[1]

---

1. Paragraph 245.9 of the Operations Instructions provides:

245.9 *Employment.* During the time any application for status as a permanent

The evidence adduced at a hearing on plaintiffs' motion showed that it generally takes six months, and can take as long as three years, for the INS to process a petition for a change to permanent resident status. These petitions are usually based on the alien's marriage to a citizen. The INS sometimes feels it is necessary to investigate the legitimacy of such a marriage in order to assure that the immigration laws are not evaded through fraudulent, pro forma marriages. However, substantial delays in processing petitions for changes in status may occur even before the INS has decided whether or not to investigate the petition.

Plaintiffs' grievance is that the INS frequently fails to take any action on a request for the "EMPLOYMENT AUTHORIZED" endorsement until it has completed its processing of the underlying change-of-status petition, despite the fact that the Operations Instructions appear to contemplate some discretionary but nevertheless affirmative act by the INS in rejecting or granting such a request *during the pendency of the change of status petition.* The INS' inaction results in hardship to plaintiffs, however, only by virtue of a state statute. Connecticut is apparently unique among the states in making it a crime for an employer to "knowingly employ an alien who is not entitled to lawful residence in the United States." Conn.Gen.Stats. § 31–51k(a). The Connecticut Labor Department has taken the position that this statute is inapplicable to aliens who have the "EMPLOYMENT AUTHORIZED" endorsement on their Form I–94. For aliens without the endorsement, however, employment opportunities are limited to out-of-state jobs or to in-state employers willing to risk the penalties of the statute.

The failure of the INS to act promptly on requests for the endorsement, combined with the Connecticut statute, can create problems for aliens awaiting action on change of status petitions, especially when such petitions are based on marriage to a citizen. Obligations of support may be incurred by virtue of the marriage. Yet should the alien leave the state in order to get a job free of the burden of Connecticut's statute, he opens himself to a charge of a fraudulent marriage by virtue of his separation from his spouse. If the alien stays in Connecticut and continues to reside with his spouse, his acceptance of welfare disqualifies him from permanent resident status, and his wife's acceptance of welfare, even for the support of children by a prior marriage, may open the alien to a charge of a fraudulent marriage by virtue of his failure to support his spouse.

While such "Catch-22" situations were shown to be possible by the evidence presented at the hearing, there was no showing of any immediate irreparable injury to the named plaintiffs in this action. The plaintiffs have so far managed to obtain employment, either in or out of state. The Court trusts that the INS will act promptly and equitably to grant the "EMPLOYMENT AUTHORIZED" endorsement where appropriate. But the Court finds no present basis for the issuance of injunctive relief against the INS.

The real source of plaintiffs' problems is the Connecticut statute which purports to regulate employment opportunities on the basis of alienage and aliens' status under federal law. Plaintiffs have indicated they are about to bring an action to restrain the enforcement of Conn.Gen.Stats. § 31–51k. Should the statute be found to be invalid,[2] plain-

---

resident is pending, the applicant's Form I–94, upon request, may be noted "EMPLOYMENT AUTHORIZED—ADJUSTMENT APPLICANT."

**2.** The unconstitutionality of the statute would seem to be patent. A state cannot

discriminate against aliens save when necessary to serve a compelling state interest. In Re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) ; Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) ; Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

tiffs will gain far more effective relief for alleviating the problems described to the Court in this action than any relief which could be fashioned herein.

The motion for a preliminary injunction is denied.

So ordered.

To the extent Connecticut seeks to discriminate among aliens, rather than simply between aliens and citizens, its classifications are still subject to strict scrutiny, not only because the suspect classification of alienage remains as an element in the classification, but also because the discrimination in employment opportunities impinges on aliens' right to travel, see Graham v. Richardson, *supra*, 403 U.S. at 375–376, 91 S.Ct. 1848, and conflicts with the federal government's exclusive power to regulate the conditions of admission and residence of aliens within the United States. Graham v. Richardson, *supra*, 403 U.S. at 377–380, 91 S.Ct. 1848. As the Supreme Court said as long ago as 1915, in overturning without the benefit of modern equal protection analysis a state's attempt to impose conditions on aliens' employment:

"[R]easonable classification implies action consistent with the legitimate interests of the state, and it will not be disputed that these cannot be so broadly conceived as to bring them into hostility to exclusive Federal power. The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government. [Citation omitted.] The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work. And, if such a policy were permissible, the practical result would be that those lawfully admitted to the country under the authority of the acts of Congress, instead of enjoying in a substantial sense and in their full scope the privileges conferred by the admission, would be segregated in such of the states as chose to offer hospitality." Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 11, 60 L.Ed. 131 (1915).