## Fishing Licenses

KANE, *Attorney General,* April 7, 1975—We have received an inquiry from an alien resident

concerning the constitutionality of the statutory requirement that resident aliens purchase more expensive "Non-Resident Fishing Licenses" rather than the less expensive "Resident Fishing Licenses" available to citizen residents. The question presented is whether a resident alien may constitutionally be charged a higher fish license fee merely because of his noncitizen status.

It is our opinion, and you are hereby advised, that the citizenship requirements for a resident fishing license found in section 220 of The Fish Law of December 15, 1959, P.L. 1779, as amended, 30 PS §220, should be treated as unconstitutional. No applicant for a resident fishing license should be· denied on the basis of his or her alien status.

Subsection (a) of section 220 provides substantially as follows:

". . . every person . . . upon application to any issuing agent within the Commonwealth, or to the Commission, and upon the establishment . . . that he has been a bona fide resident of this Commonwealth for a period of sixty days next preceding his application and was born in the United States, and in the case of naturalized foreign-born residents, the production of such applicant's naturalization papers, shall, upon the payment to the issuing agent or the Commission of a license fee of seven dollars fifty cents ($7.50) . . . and in the event that the license is issued by an issuing agent, a fee of twenty-five cents (25¢) for the use of the issuing agent, be entitled to the license herein referred to as a 'resident fishing license.'": 30 PS §220(a).

The application of a Pennsylvania resident-alien, qualifying in all other respects for a resident fishing license, would be denied on the basis of the failure of the applicant to meet citizenship qualifications.

In order to obtain a license, the applicant would be required to apply for a nonresident license, in accordance with section 221(a) of the act which provides, in pertinent part:

"For the purposes of this article, every person . . . upon application to any issuing agent within the Commonwealth or to the Commission and the presentation of proof that he is an alien or a nonresident of this Commonwealth, shall, upon the payment to the issuing agent or the Commission of the sum of twelve dollars fifty cents ($12.50), and in the event the license is issued by an issuing agent, the payment of twenty-five cents (25¢) for the use of the issuing agent, be entitled to the license herein referred to as a 'nonresident fishing license.'": 30 PS §221(a).

The impact of the two quoted provisions of The Fish Law is that a resident alien must pay $5. more than a citizen resident for the same fishing rights. This results in unequal opportunity to share in the rights or privileges afforded by the grant of a fish license and is discriminatory as to resident aliens.

The Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." A resident alien has long been held to be a person within this amendment: Truax v. Raich, 239 U.S. 33 (1915); Yick Wo v. Hopkins, 118 U.S. 356 (1886). Recent Supreme Court decisions have made it clear that the constitutional rights of a resident alien[1] are abridged when he is

---

1. A state may validly classify nonresidents of the state in a manner so as to require a reasonable additional license fee from them over the amount charged residents. The United

discriminated against by the state unless the state has satisfied the heavy burden of showing that the discrimination is necessary to accomplish a permissible and compelling interest. In Re Griffiths, 413 U.S. 717 (1973); Sugarman v. Dougall, 413 U.S. 634 (1973); Graham v. Richardson, 403 U.S. 365 (1971). See also Chapman v. Gerard, 456 F. 2d 577 (3rd Cir. 1972).

In Takahashi v. Fish and Game Commission, 334 U.S. 410 (1948), the Supreme Court held California's purported ownership of the fish off its shores did not constitute such an interest as would justify excluding aliens from commercial fishing licenses while permitting such licenses to other state residents. Justice Black wrote:

"The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws.": 334 U.S. at 420.

The Attorney General of the Commonwealth of Pennsylvania has frequently been called on in the last four years to render advice as to the validity of similar citizenship requirements and has always responded that such requirements are unenforceable.[2] The instant classification presents no

States Supreme Court thus upheld a fee charged nonresident fishermen in Haavik v. Alaska Packers Ass'n., 263 U.S. 510 (1924).

2. O. O. No. 48, Op. Pa. Atty. Gen. (Sept. 18, 1974) concerning corporate liquor licenses; O. O. No. 23, Op. Pa. Atty. Gen. (April 30, 1974) concerning individual liquor licenses; O. O. No. 52, Op. Pa. Atty. Gen. (June 20, 1973) concerning public weighmasters; O. O. No. 4, Op. Pa. Atty. Gen. (Jan. 15, 1973) concerning state scholarship applicants; O. O. No. 116, Op. Pa. Atty. Gen. (April 4, 1972) concerning registered and practical

reason to alter the advice which has heretofore been customary. There is no compelling purpose to differentiate alien and nonalien residents for fishing licenses. Since both are granted licenses, the only purpose for the difference that can be argued is the increase in resulting revenue, hardly a compelling purpose in light of the small amount of moneys involved.

After examination, it is our conclusion that the citizenship requirements for a resident fish license set forth in section 220 of The Fish Law of 1959, 30 PS §220, are contrary to the Fourteenth Amendment and United States Supreme Court cases directly on point. You are therefore advised that such citizenship requirements are to be treated as unenforceable and no license application should be refused due to the noncitizen status of the applicant.

nurses; O. O. No. 114, Op. Pa. Atty. Gen. (March 23, 1972) concerning pharmacists; O. O. No. 113, Op. Pa. Atty. Gen. (March 23, 1972) concerning physicians; O. O. No. 112, Op. Pa. Atty. Gen. (March 15, 1972) concerning real estate brokers; O. O. No. 92, Op. Pa. Atty. Gen. (Dec. 17, 1971) concerning veterinarians.